UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-30351

_____


DAVID S. HUGHES,                              Plaintiff-Appellee,
                                              Cross-Appellant,

                                versus

INTERNATIONAL DIVING AND CONSULTING
SERVICES, INC., ET AL.,                       Defendants-Appellants,
                                              Cross Appellees.


_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____
(October 17, 1995)

Before WIENER and DAVIS, Circuit Judges, and VANCE,[*] District
Judge.

PER CURIAM:

      Appellants International Diving and Consulting Services, Inc.
and David Maurice Golding, as representative of Certain
Underwriters of Lloyds of London and London & Hull Maritime
Insurance Company Limited, Sphere Drake Insurance, Dai-Tokyo
Insurance Company, Ocean Marine Insurance Company, and Prudential
Insurance Company (collectively "International") appeal from a jury

_____
      [*]   District Judge of the Eastern District of Louisiana,
sitting by designation.

1

verdict in favor of plaintiff-appellee David Hughes.  Appellants assert several errors on appeal.  First, appellants contend that the jury award of future wages was not based on competent evidence and that the trial court erred in denying International's motion for judgment as a matter of law on that issue.  Appellants also assert that the trial court erred by failing to instruct the jury on piercing the corporate veil and on plaintiff's duty to mitigate damages.  Alternatively, appellants contend that the trial court erred by failing to set aside or reduce the damage award for past wages due to plaintiff's alleged failure to mitigate and because the past wage award was based on an expert opinion not supported by the evidence.  Finally, appellants seek a credit of $2,150 on any damages awarded based on a pretrial stipulation that they advanced that amount to Hughes as part of their obligation to pay maintenance and cure benefits.  Plaintiff David Hughes cross-appeals asserting that the trial court erred by granting a new trial on the issue of past wages and by setting aside the jury's award for future medical expenses, punitive damages, and attorneys' fees.  We have thoroughly reviewed the record in this matter.  We find no error in the trial court's rulings and, therefore, affirm the judgment entered in these proceedings.

I.   BACKGROUND

David Hughes was formerly employed by International Diving and Consulting Services as a commercial diver aboard its vessels.  On December 29, 1990, after performing an 118-foot dive from a jack-up

barge, Hughes experienced nausea during his ascent and while he was in a surface decompression chamber. A supervisor attributed plaintiff's nausea to oxygen sickness and altered the surface decompression schedule for Hughes without consulting a physician. Nevertheless, by the completion of his decompression schedule, Hughes's nausea had subsided, and he was able to shower, eat dinner, and sleep without difficulty. The next day, Hughes performed a second 118-foot dive. Upon ascending, however, Hughes's entry into a decompression chamber was delayed for a period of six minutes. Approximately 26 hours after completing the second dive, Hughes experienced numbness in his right chin and left foot. He notified his supervisor, who ordered Hughes to return to the decompression chamber. When his condition did not improve, Hughes was brought shoreside and admitted to a medical facility for further examination and testing.

Hughes was ultimately examined by Dr. Keith Van Meter, his treating physician and an expert in the field of hyperbaric and diving medicine, and by Dr. Thor Borreson, an expert in the field of neurology. Initial tests revealed peripheral polyneuropathy involving both legs. Dr. Borreson concluded that Hughes suffered from a central spinal chord injury caused by decompression sickness. Dr. Van Meter concurred in Borreson's diagnosis and disqualified Hughes from diving indefinitely.

In May 1991, subsequent tests revealed that Hughes's central spinal chord was normal. Based on these tests, Dr. Borreson revised his initial diagnosis and found that Hughes's neuropathy

3

was not caused by decompression sickness. Dr. Van Meter, however, continued to hold the opinion that Hughes's neuropathy was causally connected to decompression sickness. While Hughes's neuropathy did not cause him any pain or restrict his physical activity, Dr. Van Meter further believed that Hughes's condition could be susceptible to reinjury or exacerbation if he returned to diving. Dr. Van Meter thus advised Hughes and his employer that plaintiff should not return to diving. Hughes received similar advice from another treating physician, Dr. Larry Weiss.

At trial, Hughes alleged that International violated the Jones Act and general maritime law by negligently failing to follow recognized industry safeguards for divers and by failing to pay maintenance and cure. Hughes further alleged that International was therefore liable for past and future wage losses arising from his inability to return to his former profession. The jury rendered a verdict for Hughes in the amount of $300,450 for past and future wages, medical expenses, physical pain and suffering, mental anguish, and maintenance and cure. The jury also awarded plaintiff punitive damages and attorneys' fees of $25,000 for International's alleged failure to provide maintenance and cure.

International filed a post-trial motion for judgment as a matter of law, a new trial, to alter or amend the judgment, and remittitur. Finding that International had paid Hughes's medical expenses, the trial court granted its motion for judgment as a matter of law on plaintiff's claims for maintenance and cure, attorneys' fees, and punitive damages. The trial court further

4

concluded that Hughes had failed to produce sufficient evidence to support the jury award of $54,000 for past wages and granted a new trial on that issue. The trial court denied appellants' motion on the remaining issues. The second trial on past wages resulted in an award of $35,132. The trial court subsequently entered judgment in favor of Hughes and against International in the amount of $232,132.

II. ANALYSIS

A. <u>Expert Testimony</u>

International contends that the jury award for future wages was based on the inadmissible expert testimony of Dr. Van Meter. Prior to trial, International filed a motion in limine to exclude the testimony of Dr. Van Meter as speculative under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ___ U.S. ___, 113 S.Ct. 2786, 2976 (1993). In connection with its motion, International requested a hearing to determine the admissibility of Van Meter's expert testimony pursuant to Fed. R. Civ. Pro. 104.[1] The trial court denied International's request for a hearing and reserved judgment on the admissibility of Van Meter's testimony until the time of trial.

---

[1] Fed. R. Evid. Rule 104(c) provides as follows:

Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require, or when an accused is a witness and so requests.

5

At trial, Dr. Van Meter testified that decompression sickness is a risk commonly associated with commercial diving and that the neuropathy suffered by Hughes could be reinjured or exacerbated by another episode of decompression sickness. Dr. Van Meter opined that given the risk of decompression sickness, Hughes was medically disabled from returning to work as a commercial diver. On cross-examination, Dr. Van Meter conceded that while "many physicians" shared his view that neuropathy was susceptible to reinjury from decompression sickness, his opinions were not based on objective scientific evidence such as publications or testing. International responded by reurging its motion to strike Dr. Van Meter's testimony as speculative. The trial court initially denied the motion to strike. However, after two days of additional expert testimony, the court reconsidered its ruling, ordered the portion of Dr. Van Meter's testimony concerning reinjury stricken and instructed the jury to disregard it.

International argues that the trial court committed reversible error by refusing to hold a Rule 104 hearing, by allowing Dr. Van Meter to testify on the likelihood of reinjury if Hughes returned to diving and by failing to immediately strike the testimony. International further asserts that the trial court's curative instruction came too late to offset the prejudice caused by the admission of Dr. Van Meter's testimony earlier in the trial. We need not decide whether the trial court's failure to conduct a pretrial hearing and to strike Dr. Van Meter's testimony immediately was error because, if it were, it was harmless. *See*

6

*Wheat v. Phizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994); *see also Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245, 1248 (5th Cir. 1985)("Any error in the admission of evidence will be disregarded unless the admission affects the substantial rights of the complaining party."). There was substantial evidence, independent of Dr. Van Meter's testimony, to support plaintiff's claim that he is permanently disabled from diving. This evidence is discussed below in connection with our review of the trial court's denial of International's motion for judgment as a matter of law on the issue of future wages.

B. <u>Future Wages</u>

We review the district court's denial of International's motion for judgment as a matter of law under the standard enunciated in *Lavender v. Kurn*, 352 U.S. 521, 77 S.Ct. 457 (1957). Under *Lavender*, judgment as a matter of law on a Jones Act count is appropriate only when there is a complete absence of probative facts supporting the nonmovant's position. *Springborn v. American Commercial Barge Lines*, 767 F.2d 89, 98 (5th Cir. 1985); *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 373 n.2 (5th Cir. 1981); Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 (5th Cir. 1980); *see also Wooden v. Missouri Pacific R.R.*, 862 F.2d 560 (5th Cir. 1989)(application of standard in FELA case). This standard is highly favorable to the plaintiff and requires that we validate the jury verdict if at all possible. In making this determination, we consider only competent evidence and, therefore, disregard that

7

portion of Dr. Van Meter's testimony that the trial court struck as speculative.

At trial, Hughes argued that he is permanently disabled from diving because decompression sickness is a hazard commonly faced by divers, and another bout of decompression sickness could reinjure or aggravate his neuropathy. On appeal, International does not dispute that the evidence at trial established that decompression sickness is a hazard commonly faced by divers or that Hughes suffers from neuropathy. Nor does it contest plaintiff's claim that there is a causal connection between decompression sickness and neuropathy. Rather, International asserts that the evidence at trial was insufficient to support the inference that Hughes's condition would be aggravated or reinjured if he were to contract decompression sickness in the future. We disagree.

Dr. Harold Ginzburg, an expert for the plaintiff, specifically testified that Hughes was disqualified from diving because his neuropathy was susceptible to reinjury if he returned to his former position. International contends that Ginzburg's testimony is irrelevant because his opinion was based on the expert testimony of Dr. Van Meter. However, in addition to relying on the testimony of Dr. Van Meter, Dr. Ginzburg stated that his opinion was based on a review of the medical literature, plaintiff's medical record, his experience, and the testimony of another expert Dr. Joseph Jackson. There is nothing to indicate that Dr. Ginzburg would have arrived at a different opinion if he had not heard Dr. Van Meter's testimony.

8

Nor do we think that Dr. Ginzburg's opinion is inherently untrustworthy or without scientific foundation. Indeed, Ginzburg's expert opinion finds support in the testimony of defense expert Dr. Mark Bradley, who opined that "sick nerves appear to be more susceptible to decompression sickness." While International argues that Dr. Bradley's statement was made in reference to carpal tunnel syndrome and does not apply to plaintiff's neuropathy, our review of the record did not disclose such a qualification. The risk of reinjury for divers with neuropathy is also evident from International's own hiring practices. Gerald Ashker, an International representative, testified that Hughes was not "hirable" in the face of a report from his treating physician disqualifying him from diving due to the risk of reinjury for neuropathy. Gerald Asker's testimony was underscored by International's safety manual, which prohibits a person with "significant central or peripheral nervous system disease" from returning to work as a diver.

In sum, we find that the evidence of permanent disability in this case easily surpasses "the complete absence of probative facts" standard applied in reviewing the sufficiency of evidence for a Jones Act claim. International has not challenged the sufficiency of the evidence to support the measure of damages awarded for the disability. Accordingly, the trial court's denial of International's motion for judgment as a matter of law on the issue of future wages is affirmed.

C.    The Offset Claim

International contends that any damage award should be reduced by $2,500 because it advanced that amount to Hughes in 1991. In support of its argument, International relies on a stipulation entered into by the parties prior to trial. In ruling on this issue, the trial court refused to reduce the damage award because the jury in the second trial was apprised of the stipulated advance in connection with its consideration of past wages. Specifically, the trial court found that plaintiff's expert economist had deducted all income reported by Hughes on his 1991 W2 tax form, and there was no evidence to suggest that the wage advance had not been reported, or that it was not otherwise considered by plaintiff's expert in estimating the amount of past wages owed. We agree.

The stipulation upon which International relies does not provide that any damage award will be reduced by $2,500. Nor did the parties remove the issue of damages from the province of the jury by stipulating that $2,500 was the total sum of past wages owed to Hughes. *See Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 985 (5th Cir. 1989). Rather, the stipulation merely states that International advanced $2,500 to Hughes in 1991 as part of its obligation to pay maintenance and cure benefits. As such, it was nothing more than a convenient way for International to avoid having to introduce evidence on the amount of past wages previously paid and to which Hughes was not entitled. Indeed, International used the stipulation for its intended purpose by eliciting testimony from Hughes during the second trial concerning the

10

stipulated advance. Because the stipulated advance was presented to the jury for consideration in its determination of past wages, we find no error in the trial court's decision not to reduce the damage award by the stipulated amount.

   D.   <u>Remaining Issues</u>

   The remaining issues raised on appeal can be addressed summarily. We find no error with the trial court's instructions to the jury on mitigation of damages and piercing the corporate veil. Further, we agree with the trial court's refusal to reduce or set aside the jury award for past wages obtained by Hughes in the second trial. For the reasons stated in its well-reasoned opinion, we also agree with the trial court's decision to grant International's post-trial motion for a new trial on the issue of past wages and for remittitur on the issue of maintenance and cure, punitive damages, and attorneys' fees.

III. CONCLUSION

   For the foregoing reasons, the judgment of the trial court is AFFIRMED.