United States Court of Appeals,

Fifth Circuit.

Nos. 95-30250, 95-30272.

Charles D. GAUTREAUX, Plaintiff-Appellee,

v.

SCURLOCK MARINE, INC., Defendant-Appellant.

June 6, 1996.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER,[1] District Judge.

DUHÉ, Circuit Judge:

Charles Gautreaux brought this Jones Act and general maritime law action against his employer, Scurlock Marine, Inc. ("Scurlock"), seeking damages for work-related injuries. The district court entered judgment on a jury verdict in Gautreaux's favor and denied Scurlock's motion for judgment as a matter of law, new trial, or to alter, amend or remit the judgment. Scurlock appeals, complaining of the jury instructions, denial of its motion for judgment as a matter of law, refusal to grant a new trial or to alter, amend or remit the judgment, and denial of limitation of liability. We affirm.

## I. BACKGROUND

Archie Scurlock, as President and owner of Scurlock Marine, purchased the BROOKE LYNN in May 1993, and retained as her

---

[1]District Judge of the Northern District of California, sitting by designation.

permanent captain Lance Orgeron. In October 1993, Charles Gautreaux applied for a position with Scurlock. Gautreaux had worked as a tanker man since the early 1980's and had recently earned a U.S. Coast Guard master's license. Scurlock hired Gautreaux as the BROOKE LYNN's relief captain.

The BROOKE LYNN is a standard inland push boat, equipped with two towing winches on her bow, which are used to secure lines joining the BROOKE LYNN to the barges in her tow. The starboard side winch is hydraulic, and the port side winch is electric. Upon being hired, Gautreaux was taken to the BROOKE LYNN and instructed on her operation by Archie Scurlock. Orgeron took Gautreaux on a tour of the vessel, showing him the layout of the vessel and familiarizing him with her equipment. Orgeron showed Gautreaux the manual crank handle that accompanied the electric winch and told him that it was to be used to override the electric switches on the winch if they failed. Orgeron explained that, if the winch became "bound up" and would not engage by use of the electric ignition switch, the manual crank should be attached to the winch motor and turned a few times to "unbind" the winch, and then the electric ignition switch should be used to try to engage the winch. Neither Scurlock nor Orgeron told Gautreaux that when using the manual crank handle he should not leave the handle on the winch motor when attempting to engage the winch by pressing the electric ignition switch.

About four months after he was hired, Gautreaux, serving as captain of the BROOKE LYNN, relieved the tanker man on duty and

2

began off loading of the barge in tow. As the barge discharged its cargo, it began to rise in the water, eventually causing the towing wires to become taut. Noticing this, Gautreaux attempted to relieve the tension in the wires by unwinding them from the winches. He released the starboard wire first, which caused that side of the BROOKE LYNN to drop and the port side towing wire to become even tighter. Gautreaux then attempted to release the port side wire, but the electric winch would not work. He attached the manual crank to the winch motor, and began turning the crank while simultaneously pressing the electric ignition switch. When the motor started, the manual crank handle flew off and struck Gautreaux on the right side of his face, crushing his right eye and inflicting other severe fractures and lacerations.

Gautreaux sued Scurlock, alleging that his injuries were caused by its negligence and the unseaworthiness of the BROOKE LYNN. Gautreaux's primary complaint was that Scurlock failed to properly train him in the use and operation of the electric towing winch and its manual crank handle, thereby not providing him a safe place to work. Scurlock answered and sought exoneration from or limitation of its liability. After a two-day trial, the jury returned a verdict in favor of Gautreaux on his Jones Act negligence claim, but found the BROOKE LYNN seaworthy. The jury apportioned fault 95% to Scurlock and 5% to Gautreaux and awarded a total of $854,000 in damages.[2]

---

[2] The jury's award was:

Past and future pain and suffering

3

The district court entered judgment for Gautreaux for $811,300. By separate order, the district court denied Scurlock's petition for limitation of liability. Scurlock moved in the alternative for judgment as a matter of law, for new trial, or to alter, amend or remit the judgment. The district court denied these motions, conditioning denial of the motion for new trial on the amount of lost future wages on Gautreaux's acceptance of a remittitur.[3] Gautreaux accepted the remittitur, and the district court entered an amended judgment for $736,925 for Gautreaux.[4]

On appeal, Scurlock Marine argues that the district committed the following errors: (1) improperly charging the jury on the applicable law, (2) refusing to enter judgment as a matter of law on the issues of entitlement to lost future wages and liability, (3) failing to recognize that the awards for lost future wages and

---

| | |
|---|---|
| and disability | $300,000 |
| Past lost wages | 24,000 |
| Future lost wages | 500,000 |
| Future medical expenses | 30,000 |
| Total | $854,000 |

[3]The district court found the jury's award of $500,000 for lost future wages excessive and against the great weight of the evidence, insofar as the award was premised on Gautreaux's inability to return to minimum-wage employment during the first two years after the accident. Accordingly, the district court conditioned denial of Scurlock's new trial motion on this element of damages on Gautreaux's acceptance of an award of $400,625.

[4]On June 7, 1995, the district court further amended its judgment, discovering that it had failed to reduce the remitted amount of lost future wages by Gautreaux's percentage of fault.

4

pain and suffering were excessive and warranted a new trial, and (4) denying its petition for limitation of liability.

## II. DISCUSSION

*A. Jury instructions*

The district court has broad discretion in formulating the jury charge, and so we review jury instructions with deference. *Stine v. Marathon Oil Co.,* 976 F.2d 254, 259 (5th Cir.1992); *Bradshaw v. Freightliner Corp.,* 937 F.2d 197, 200 (5th Cir.1991); *Treadaway v. Societe Anonyme Louis-Dreyfus,* 894 F.2d 161, 167 (5th Cir.1990). Accordingly, a jury charge is to be considered as a whole, and so long as the jury is not misled, prejudiced, or confused, and the charge is comprehensive and fundamentally accurate, it will be deemed adequate. *Davis v. Avondale Indus., Inc.,* 975 F.2d 169, 174-75 (5th Cir.1992); *Bradshaw,* 937 F.2d at 200. We reverse for error in charging the jury only when the charge given, as a whole, leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995) (quoting *FDIC v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994)); *Hall v. State Farm Fire & Casualty Co.,* 937 F.2d 210, 214 (5th Cir.1991) (quoting *Treadaway,* 894 F.2d at 167-68).

Scurlock contends the district court erred by failing to instruct the jury that a Jones Act employer is entitled to rely on the experience, training, license, or education of individual seamen-employees in determining whether or to what extent to train them. Further, Scurlock argues the district court's refusal to

5

instruct the jury that it could consider these same qualities of a seaman-employee when determining his contributory negligence was also error.

As a threshold matter, the district court is not required to give a requested jury instruction that is not a correct statement of the law. *Mooney,* 54 F.3d at 1216; *Treadaway,* 894 F.2d at 167. If the proposed instruction does accurately state the law, the district court still has not committed reversible error by refusing to give it, provided the substance of the requested instruction is conveyed in the charge. *Dawsey v. Olin Corp.,* 782 F.2d 1254 (5th Cir.1986). *See also Bank One, Texas, N.A. v. Taylor,* 970 F.2d 16, 30 (5th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993).

The district court charged:

> Now in considering the experience of the plaintiff, you may find the defendant negligent if you find from a preponderance of the evidence that defendant assigned plaintiff to perform a task which he was not adequately trained to perform. The defendant was obliged to train all of its employees, including the captain of the vessel, in the proper and safe use of the vessel's equipment. However, defendant was under no obligation to warn the plaintiff of conditions of which he was aware.

This instruction clearly invited the jury to assess the impact of Gautreaux's training and experience on Scurlock's duty to train him in the operation of the winch.[5] The district court need not adopt

---

[5]We do not decide whether, generally, a Jones Act employer's duty to train its seamen-employees is controlled by the amount or lack of experience, training, licensing, education, or knowledge the seaman-employee possesses, as such a conclusion is not warranted by these facts. Instead, on this record, Gautreaux's uncontroverted testimony that he had never seen a manual crank handle for use on an electric winch was sufficient to establish

6

verbatim the wording of an instruction suggested by a party.  *See, e.g., Jackson v. Firestone Tire & Rubber Co.,* 788 F.2d 1070, 1075 (5th Cir.1986).  Instead, its task merely is to fully and correctly charge the jury on the applicable law.  *Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993) (quoting 9 Wright & Miller, Federal Practice and Procedure § 2556 (1917)).  On this record, we find no reversible error in the district court's refusal to give Scurlock's proposed instructions.

As to the instructions on Gautreaux's contributory negligence, the district court was not as precise, but was equally as effective.  The district court instructed:

> If a seaman is provided with a safe way to work and he chooses to do something in a way that he knows or should know is unsafe and dangerous, his employer is not responsible for the results of a choice made knowingly by the seaman.
>
> ... [I]f you find that the plaintiff chose to use an unsafe method that he knew or should have known was unsafe, or in violation of instructions, you may find he was wholly or partly responsible for what happened.

Again, it is not error for the district court to refuse to give a requested instruction that accurately states applicable law if the substance of that instruction is embraced in the charge.  We conclude that, albeit without the exactitude Scurlock sought, this instruction sufficiently conveyed that Gautreaux's training, knowledge, and experience were factors the jurors could consider in determining whether his own conduct was negligent and contributed to his injuries.

---

that Scurlock was required to train him as to the proper use of this appliance.

7

Finally, Scurlock argues it was error to instruct the jury with respect to determining contributory negligence that Gautreaux was only required to exercise slight care for his own safety under the circumstances. Instead, Scurlock contends, the standard to which Gautreaux, and all seamen, should be held is that of a reasonably prudent person exercising ordinary or due care under like circumstances. The slight care standard, however, is the settled law of this Circuit, *see, e.g., Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1355 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988); *Pickle v. International Oilfield Divers, Inc.,* 791 F.2d 1237, 1240 (5th Cir.1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); *Brooks v. Great Lakes Dredge-Dock Co.,* 754 F.2d 536, 538 (5th Cir.1984), *and as modified,* 754 F.2d 539, 540 (5th Cir.1985), and the district court must instruct the jury fully and correctly on the applicable law.[6] Thus, that the district court declined to give Scurlock's proposed instruction that the seaman's duty is one of ordinary or due care, in favor of the slight care instruction, was not error.[7]

---

[6]The contributory negligence instructions given by the district court conform to the Fifth Circuit Pattern Jury Instructions on this issue. *See* Pattern Jury Instructions, Civil Cases, U.S. Fifth Circuit District Judges Association No. 4.7 (West 1995).

[7]In its brief and at oral argument, Scurlock urged this court to abandon the slight care standard in Jones Act cases, contending that the standard has evolved from this court's blind adherence to an incorrect statement of the law. In support of its position, Scurlock cites an article by the admiralty scholar, Professor Robert Force of Tulane Law School, *Allocation of Risk and Standard of Care Under the Jones Act: "Slight Negligence,'*

*B. Judgment as a matter of law*

*1. Lost future wages*

Scurlock argues the district court erred in denying its motion for judgment as a matter of law on Gautreaux's claim for lost future wages, because Gautreaux failed to introduce any expert testimony or other vocational disability evidence demonstrating that he suffered diminished future earning capacity beyond the two years medical experts testified it would take him to adjust to monoscopic vision. Instead, the only evidence of disability was Gautreaux's own testimony that he did not feel comfortable returning to his pre-injury employment. Scurlock contends the record is, therefore, devoid of competent evidence supporting a claim for lost future wages for any period beyond the two-year period of adjustment.

Judgment as a matter of law in a Jones Act case is appropriate only when there is a complete absence of probative facts supporting the nonmovant's position. *See, e.g., Hughes v. International Diving & Consulting Servs., Inc.,* 68 F.3d 90, 93 (5th Cir.1995). As this standard is highly favorable to the plaintiff,

*"Slight Care"?,* 25 J.Mar.L. & Com. 1 (1994), and the recent opinion of the Third Circuit Court of Appeals in *Fashauer v. New Jersey Transit Rail Operations, Inc.,* 57 F.3d 1269 (3d Cir.1995). While we recognize the fine work of Professor Force and the astute observations of our sister circuit, settled law of this Circuit, such as the slight care standard in a Jones Act case, can only be changed, absent action by the United States Supreme Court, by this court sitting en banc. *See, e.g., FDIC v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees,* 961 F.2d 86, 89 (5th Cir.1992), *cert. denied,* 506 U.S. 1071, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993).

we must validate the jury verdict if at all possible. *Id.* As there was more than adequate evidence upon which to submit to the jury the question of Gautreaux's lost future wages, validation of the verdict in this case is appropriate.

Dr. J. Bruce Steigner, the ophthalmologist who surgically removed Gautreaux's crushed right eye and monitored his recovery from the injury, testified that Gautreaux's loss of one eye equated to a 50% disability of his visual system and a 25% disability of his total anatomy according to guidelines of the American Medical Association. Dr. Steigner further stated that loss of an eye greatly impairs one's depth perception and peripheral vision, impairments which he believed would make piloting a tug difficult. Scurlock's psychiatric expert testified that Gautreaux suffered from an adjustment disorder accompanied by depression, a condition not uncommon following such an injury. He indicated that, while he did not think Gautreaux was disabled by this condition, he did believe Gautreaux harbored legitimate fears about his post-injury condition and recommended that Gautreaux not put himself in positions that could threaten the safety of his other eye. Finally, expert economic testimony quantified Gautreaux's alleged loss. This evidence, combined with Gautreaux's testimony that he fears returning to his former position and losing his other eye, that he has only a tenth grade education, and that he has been trained on and worked on boats most of his work life, sufficiently supports the district court's decision to submit the issue of lost future wages to the jury.

10

*2. The Walker "primary duty" doctrine*

Scurlock argues Gautreaux's claim is barred by the doctrine enunciated in *Walker v. Lykes Bros. S.S. Co.,* 193 F.2d 772 (2d Cir.1952), such that it was entitled to judgment as a matter of law on the issue of liability. *Walker*'s holding has been construed to mean that a seaman who breaches a duty owed his employer, which he assumed by accepting employment, may not recover from his employer if such breach is the sole cause of the seaman's injury. *Peymann v. Perini Corp.,* 507 F.2d 1318 (1st Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975). Accordingly, Scurlock argues Gautreaux's recovery is barred because the master or ship's officer is responsible for the safe operation of the vessel. Gautreaux breached this duty because he forgot to release the towing wires during unloading operations, thereby creating excessive strain on the wires and causing the failure of the electric towing winch, in response to which he negligently operated the winch in such a manner as to cause himself injury.

Scurlock attempts to distinguish *Kelley v. Sun Transp. Co.,* 900 F.2d 1027 (7th Cir.1990), and *Kendrick v. Illinois Cent. Gulf R.R.,* 669 F.2d 341 (5th Cir.1982), both of which denounced *Walker*'s complete bar rule in favor of proportionate fault reduction, as not embracing the scenario in which the captain creates the unreasonably unsafe condition and then negligently proceeds to encounter it, thereby injuring himself.

Our jurisprudence may lend some support to Scurlock's contention that Gautreaux should be barred from recovery if his

11

negligent conduct alone caused his injury, and his employer was completely free from fault. *See, e.g., Kendrick,* 669 F.2d at 344 ("[The employee's] negligence would only reduce, not bar, recovery unless the employer were not negligent at all and the employee's negligence was the sole cause of his injury."); *Boudreaux v. Sea Drilling Corp.,* 427 F.2d 1160 (5th Cir.1970). Nonetheless, a Jones Act employer is liable for even the slightest negligence, and the seaman-plaintiff's burden of proving causation is "featherweight." *River Transp. Assocs. v. Wall,* 5 F.3d 97, 100 n. 4 (5th Cir.1993); *Zapata Haynie Corp. v. Arthur,* 980 F.2d 287, 289 (5th Cir.1992), *cert. denied,* 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993). As indicated earlier, when confronted with the Jones Act plaintiff's "featherweight" burden, judgment as a matter of law is appropriate only when there is a complete absence of probative facts supporting the nonmovant's position. *Hughes,* 68 F.3d at 93; *Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 188 (5th Cir.1991). Thus, because the record contains evidence that Scurlock Marine was at least slightly negligent and that its negligence contributed to Gautreaux's injuries, the district court's refusal to take the question of liability from the jury was proper.

*C. Damages*

Like other factual findings, we review a jury's finding of damages for clear error. *Myers v. Griffin-Alexander Drilling Co.,* 910 F.2d 1252, 1255 (5th Cir.1990) (quoting *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1168 (5th Cir.1982), *cert. denied,* 460

U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983)). If, however, "a jury award is reviewed indirectly through the conduit of the trial court's response to a motion for new trial on damages, it is the propriety of the judge's action rather than the jury's decision that is reviewed. Thus the abuse of discretion standard of review applies." *Stokes v. Georgia-Pacific Corp., 894 F.2d 764, 769 (5th Cir.1990). See also Esposito v. Davis, 47 F.3d 164, 167 (5th Cir.1995).*

Scurlock attacks the jury's damages award on two fronts, seeking reversal of the district court's denial of its motion for new trial on these issues. Initially, Scurlock argues that, if it was proper for the jury to decide the issue, the jury's verdict on lost future wages was excessive in light of the lack of evidence as to Gautreaux's future employability. Additionally, Scurlock complains that the amount returned by the jury, $500,000, was unsupported by the evidence, as Gautreaux's economist put the figure at just over $400,000 and his counsel suggested $300,000 to $325,000 was sufficient. Accordingly, because the jury's verdict was in excess of that offered into evidence, it was based on speculation and a new trial should have been granted. Finally, Scurlock believes that the final award after the district court granted a remittitur to $400,625, the economist's figure, is still excessive, and that the granting of the remittitur was an admission by the district court that the jury verdict was unfounded, such that the award should have been reversed or further reduced.

Gautreaux defends the award on the grounds that he has only a

13

tenth grade education and his only job training is as a vessel employee, that his fear of injuring himself or others is real enough to justify his not returning to his previous employment, that the medical experts testified he would have difficulty docking vessels due to his monoscopic vision and loss of peripheral vision and depth perception, that the award after remittitur equaled that suggested by his economist, and that the jury reached its verdict after viewing all the evidence. Having reviewed the record, we cannot say that the district court abused its discretion in denying Scurlock's new trial motion, especially considering it conditioned its denial on Gautreaux's acceptance of a remittitur of almost $100,000.

Second, Scurlock argues that the $300,000 award for pain and suffering was also excessive, and that the entire award was driven by improper comments by Gautreaux's counsel aimed at inciting the passion and prejudice of the jury. Scurlock asserts that Gautreaux's pain and suffering was brief and never excessive or excruciating, as he received prompt medical care, had surgery on an out-patient basis, never sought hospitalization for pain or discomfort, and reached full medical cure in only four months. Further, Scurlock contends the award was influenced by a groundless question posed by Gautreaux's counsel to Archie Scurlock concerning threats of "blackballing" Gautreaux if he proceeded with this lawsuit—an accusation to which Scurlock claims it was not allowed to respond.

In fact, Gautreaux has undergone three surgeries, had his

14

eyeball scooped out, is forced to wear a prosthetic eye which must be removed for cleaning frequently, and must endure both functional and cosmetic disabilities for the rest of his life. Also, while recuperating from his second surgery, Gautreaux was placed on extraordinarily strong medication to combat painful headaches and other discomfort associated with his injury. Further, Gautreaux suffers from moderate depression as a result of the loss of his eye. Finally, the allegedly improper comments of Gautreaux's counsel consist of a single question asked to Archie Scurlock about whether he threatened to blackball Gautreaux. The matter rested with Archie Scurlock's answer that he did not; no further inquiry or argument on the matter followed.

Awards of pain and suffering are fact-specific and depend to a great extent on the fact-finder's observation of the plaintiff and its subjective determination of the amount needed to achieve full compensation. *Johnson,* 845 F.2d at 1357. As such, the district court is accorded great latitude in assessing damages. *Parks v. Dowell Div. of Dow Chemical Corp.,* 712 F.2d 154, 160 (5th Cir.1983). Considering the record in this case, a jury award of $300,000 for past and future pain and suffering does not seem clearly erroneous, nor did the district court abuse its discretion in denying Scurlock Marine a new trial. *See Stokes,* 894 F.2d at 769. Additionally, because the district court is in a better position to evaluate the prejudice flowing from counsel's improper comments during trial and to determine the most effective response to ensure a fair trial, a new trial will not be granted, even if

15

counsel's remarks are improper, unless after considering the record as a whole the court concludes that manifest injustice would result from letting the verdict stand. *Johnson v. Ford Motor Co.,* 988 F.2d 573, 582 (5th Cir.1993). Because Gautreaux's counsel asked only a single question, to which Archie Scurlock responded in the negative and about which no further comment was made, substantial prejudice was not caused Scurlock and a new trial was not necessary.

*D. Limitation of liability*

The district court denied Scurlock limitation, finding that the evidence established that Scurlock, the vessel owner, negligently failed to train Gautreaux in the proper operation of the electric winch and that this failure in part caused Gautreaux's injuries. Further, the district court indicated that Scurlock was accountable for the actions of its managing officer and owner, Archie Scurlock, who failed to properly train Gautreaux.

The liability of the owner of a vessel for any loss or injury involving the vessel can be limited to the value of the vessel and its freight, provided the loss occurred without the vessel owner's "privity or knowledge." 46 U.S.C.App. § 183(a). The vessel owner seeking limitation bears the burden of proving its lack of privity or knowledge of the injury-causing conduct or condition. *Cupit v. McClanahan Contractors, Inc.,* 1 F.3d 346, 348 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994); *Verdin v. C & B Boat Co.,* 860 F.2d 150, 156 (5th Cir.1988). For the purposes of limitation, a vessel owner's privity may arise if

16

it personally participates in the negligent conduct that produces the injury, *Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1473 (5th Cir.1991), and a corporate vessel owner is charged with the privity or knowledge of its managing officers whose scope of authority includes supervision of that part of the business out of which the loss occurred, *Brunet v. United Gas Pipeline Co.,* 15 F.3d 500, 504 (5th Cir.1994); *Cupit,* 1 F.3d at 348; *Patton-Tully Transp. Co. v. Ratliff* (*In re Complaint of Patton-Tully Transp. Co.*), 797 F.2d 206, 211 (5th Cir.1986). "In the limitation of liability context, the district court's findings about negligence, unseaworthiness, privity, and knowledge are considered on appeal to be factual findings subject to review under the clearly erroneous standard." *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540, 1557 (11th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). *See also Farrell Lines Inc. v. Jones,* 530 F.2d 7 (5th Cir.1976). The district court did not err in finding that Scurlock was not entitled to limit its liability.

## III. CONCLUSION

Based on the foregoing discussion, the district court's judgment is, in all aspects, AFFIRMED.

_____

_____