**REVISED**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

Nos.  95-30250 & 95-30272

CHARLES D. GAUTREAUX

Plaintiff-Appellee

VERSUS

SCURLOCK MARINE, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

February 28, 1997

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant-Appellant Scurlock Marine, Inc. moves this En Banc Court to consider whether seamen, in Jones Act negligence cases, are bound to a standard of ordinary prudence in the exercise of care for their own safety, or whether they are bound to a lesser duty of slight care.  On appeal to a panel of this Court, Scurlock Marine had assigned as error, *inter alia*, the district court's instructions to the jury charging that seamen were bound only to a

duty of slight care for their own safety. The panel denied Scurlock Marine relief on this point because the jury instructions were consistent with what the panel considered was the settled law of this Circuit. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 84 F.3d 776, 780-81 (5th Cir. 1996). A review of our Jones Act case law reveals, however, that this "settled law" obtains from doubtful parentage. We thus now overrule cases contrary to the principles embraced in this opinion and AFFIRM in part, VACATE in part and REMAND for further proceedings as to comparative fault consistent with our decision today.

## BACKGROUND[1]

Archie Scurlock, as President and owner of Scurlock Marine, Inc., ("Scurlock Marine") purchased the M/V BROOKE LYNN in May, 1993, and retained Lance Orgeron as her first and permanent captain. Scurlock hired Charles Gautreaux as the BROOKE LYNN's relief captain in October, 1993. Gautreaux was qualified for the position, having worked as a tanker man since the early 1980s and having recently earned a United States Coast Guard master's license.

The BROOKE LYNN is a standard inland push boat, equipped with two towing winches on her bow, which are used to secure lines joining the BROOKE LYNN to the barges in her tow. The starboard side winch is hydraulic, and the port side winch is electric. Upon being hired, Gautreaux was taken to the BROOKE LYNN and instructed

---

[1]This factual summary is taken almost verbatim from our panel opinion in this case. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 84 F.3d 776, 778-79 (5th Cir. 1996).

on her operation by Archie Scurlock. Orgeron took Gautreaux on a tour of the vessel, showing him her layout and familiarizing him with her equipment. Orgeron showed Gautreaux the manual crank handle that accompanied the port side electric winch and told him that it was to be used to override the electric switches on the winch if they failed. Orgeron explained that, if the winch became "bound up" and failed to engage by use of the electric ignition switch, the manual crank should be attached to the winch motor and turned a few times to "unbind" the winch, and then the electric ignition switch should be used to try to engage the winch. Neither Scurlock nor Orgeron told Gautreaux that if he needed to use the manual crank handle to unbind the winch, he should not leave it on the winch motor when attempting to engage the winch by use of the electric ignition switch.

About four months after he was hired, Gautreaux, serving as captain of the BROOKE LYNN, relieved the tanker man on duty and began off loading of the barge in tow. As the barge discharged its cargo, it began to rise in the water, eventually causing the towing wires to become taut. Noticing this, Gautreaux attempted to relieve the tension in the wires by unwinding them from the winches. He released the starboard wire first, which caused that side of the BROOKE LYNN to drop and the port side towing wire to become even tighter. Gautreaux then attempted to release the port side wire, but the electric winch would not work. He attached the manual crank to the winch motor, and began turning the crank while simultaneously pressing the electric ignition switch. When the

3

motor started, the manual crank handle flew off and struck Gautreaux on the right side of his face, crushing his right eye and inflicting other severe injuries.

Gautreaux sued Scurlock Marine, alleging that his injuries were caused by its negligence and the unseaworthiness of the BROOKE LYNN. Gautreaux's primary complaint was that Scurlock Marine failed to properly train him in the use and operation of the electric towing winch and its manual crank handle, thereby not providing him a safe place to work. Scurlock Marine answered and sought exoneration from or limitation of its liability. After a two-day trial, the jury returned a verdict in favor of Gautreaux on his Jones Act negligence claim, but found the BROOKE LYNN seaworthy. The jury apportioned fault 95% to Scurlock Marine and 5% to Gautreaux and awarded a total of $854,000 in damages.[2]

The district court entered judgment for Gautreaux for $811,300. By separate order, the district court denied Scurlock Marine's petition for limitation of liability. Scurlock Marine moved in the alternative for judgment as a matter of law, for new trial, or to alter, amend, or remit the judgment. The district court denied these motions, conditioning its denial of Scurlock Marine's motion for new trial on Gautreaux's acceptance of a

---

[2]The jury's award was:

| | |
|---|---|
| Past and future pain and suffering and disability | $300,000 |
| Past lost wages | 24,000 |
| Future lost wages | 500,000 |
| Future medical expenses | 30,000 |
| Total | $854,000 |

4

remittitur.[3]  Gautreaux accepted the remittitur, and the district court entered an amended judgment for $736,925 for Gautreaux.[4]

On appeal to this Court, Scurlock Marine argued, *inter alia*, that in its instructions regarding contributory negligence, the district court erred by charging the jury that a Jones Act seaman need exercise only "slight care" for his own safety.  Scurlock Marine maintained that the standard to which Gautreaux, and all seamen, should be held is that of a reasonably prudent person exercising ordinary or due care under like circumstances.  Accordingly, Scurlock Marine urged this Court to abandon the slight care standard in Jones Act cases, contending the standard "has evolved from this Court's blind adherence to an incorrect statement of the law."  Gautreaux, 84 F.3d at 781 n.7.  The panel acknowledged that the viability of the slight care standard has recently been questioned but considered it the settled law of this Circuit.  It thus refused to hold that the district court erred in giving the "slight care" instruction, noting that "settled law of this Circuit, such as the slight care standard in a Jones Act case, can only be changed, absent action by the United States Supreme

___

[3]The district court found the jury's award of $500,000 for lost future wages excessive and against the great weight of the evidence, insofar as the award was premised on Gautreaux's inability to return to minimum-wage employment during the first two years after the accident.  Accordingly, the district court conditioned denial of Scurlock Marine's new trial motion on this element of damages on Gautreaux's acceptance of an award of $400,625.

[4]On June 7, 1995, the district court further amended its judgment, discovering that it had failed to reduce the remitted amount of lost future wages by Gautreaux's percentage of fault.

5

Court, by this Court sitting en banc." Id. The panel accordingly affirmed the district court's judgment and this en banc rehearing followed.

## STANDARD OF REVIEW

While trial courts are accorded substantial latitude in formulating jury instructions, "we must reverse when we have a substantial doubt that the jury has been fairly guided in its deliberations." Bode v. Pan American World Airways, Inc., 786 F.2d 669, 672 (5th Cir. 1986) (internal quotations and citation omitted); see also Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995).

## DISCUSSION

The district court's instruction, consistent with the Fifth Circuit's Pattern Jury Instructions,[5] informed the jurors that "[i]n determining whether the plaintiff was contributorily negligent, you must bear in mind that a Jones Act seaman does not have a duty to use ordinary care under the circumstances for his own safety. A Jones Act seaman is obliged to exercise only slight care under the circumstances for his own safety at the time of the accident." Scurlock Marine asserts that this charge is defective, maintaining that historically, Jones Act seamen had been expressly bound to a standard of ordinary prudence under like circumstances. In support of its contention, Scurlock Marine cites early Supreme

---

[5]The drafters, not surprisingly, apparently relied upon our explicit statement in Brooks v. Great Lakes Dredge-Dock Co., 754 F.2d 536 (5th Cir. 1984), modified on other grounds, 754 F.2d 539 (5th Cir. 1985), to draft this charge.

6

Court opinions to illustrate that the phrase "slight negligence" or "slight care" stood not for the duty of care owed by employers and employees, as the phrase is now understood, but for that quantum of evidence necessary to sustain a jury verdict on review. The duty of care owed by both parties, Scurlock Marine contends, had always been, and should remain, that of the reasonable person.

We acknowledge there is much confusion in this Circuit as to the proper standard of care by which juries should measure a plaintiff's duty under the Jones Act to protect himself. While some courts have instructed juries that a plaintiff's duty is only one of slight care, as did the district court in the instant case, others charge that the duty is one of ordinary prudence. Admittedly, this Court has been less than clear in its articulation of the proper standard of care to which seamen are bound. We granted this *en banc* rehearing to eliminate the uncertainty and to consider returning, as Scurlock Marine requests, to the reasonable person standard.

A.  The Development of the Slight Care, or Slight Negligence, Standard

The language chosen by Congress to determine the responsibility of both employers and employees under the Jones Act is simple and direct. Nothing in the statute indicates that Congress intended to hold Jones Act employees to a standard of slight duty of care in the exercise of concern for their own safety. Below, we explain the statutory scheme and Supreme Court precedent interpreting it before we illustrate our departure from their clear mandates.

*1.    The Statutory Scheme and Supreme Court Precedent*

Under the Jones Act, seamen are afforded rights parallel to those of railway employees under the Federal Employers' Liability Act ("FELA").  46 U.S.C. § 688.  Section 51 of the FELA provides, in pertinent part, that "[e]very common carrier by railroad . . . shall be liable in damages . . . for such injury or death *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51 (emphasis added).   A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury.  In their earlier articulations of § 51 liability, courts had replaced the phrase "in whole or in part" with the adjective "slightest."  In <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500, 506 (1957), the Supreme Court used the term "slightest" to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases.  In <u>Ferguson v. Moore-McCormack Lines, Inc.</u>, 352 U.S. 521, 523 (1957), the Court applied the same standard to a Jones Act case, writing, "'Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" (quoting <u>Rogers</u>, 352 U.S. at 506).

Nothing in these cases, then, supports the proposition that the duty of care owed is slight.  Rather, the phrase "in whole or in part" as set forth in the statute, or, as it has come to be

8

known, "slightest," modifies only the causation prong of the inquiry. The phrase does not also modify the word "negligence." The duty of care owed, therefore, under normal rules of statutory construction, retains the usual and familiar definition of ordinary prudence. See Texas Food Indus. Assoc. v. United States Dept. of Agriculture, 81 F.3d 578, 582 (5th Cir. 1996) (stating it is a "cardinal canon of statutory construction . . . that [in interpreting a statute,] the words of a statute will be given their plain meaning").

Despite the clarity of the Supreme Court's decisions, the word "slightest," used initially to refer to the quantum of evidence of an employer's breach of duty necessary to sustain a jury verdict, soon took on a different referent. Once the Supreme Court had reduced the statutory language "in whole or in part" to "any part, even the slightest," it was not long before our court further reduced the phrase "any part, even the slightest" to a shorthand expression of "slight negligence" or "slight evidence of negligence." Thereafter we used the phrase "slight negligence" uncritically. Justice Frankfurter's comment on the (mis)use of the phrase "assumption of the risk" in FELA actions aptly applies to our discussion today: "A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas." Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68 (1943) (Frankfurter, J., concurring). The same holds

9

true of our use of the phrase "slight negligence" or "slight care" in Jones Act negligence cases.

Guided by the Supreme Court, we had initially employed the phrase "slight negligence" as a shorthand expression for the standard by which we measure, in our review of a jury verdict, the sufficiency of evidence establishing a causal link between an employer's negligence and a seaman's injury. Significantly, an employer's duty of care always remained that of *ordinary* negligence. Soon, however, we began using the phrase "slight negligence" to refer not only to the sufficiency of the evidence inquiry but also to that duty of care Jones Act employers owed to their employees. A plaintiff, therefore, could now reach the jury not only with "slight evidence" of his employer's negligence, but also with slight evidence of his employer having been only "slightly negligent." Once we had characterized the phrase "slight negligence" as shorthand to depict a duty of care owed by an employer to its employee, it was not long before we also used the phrase to represent the plaintiff's duty of care to protect himself from work-related injuries. We did so by rephrasing "slight negligence" to "slight care."

Historically, then, Jones Act employers and seamen were expressly bound to a standard of ordinary prudence; when the phrase "slight negligence" came to stand for the duty of care owed by employers and employees, however, employers were understood to be held to a higher degree of personal responsibility as to their employees, and plaintiff-seamen were understood to be held to a

10

lower degree of personal responsibility for themselves.  We hold that the historical interpretation always should have been, and should now be, applied in this Circuit.  We offer the following survey of our case law, however, to illustrate just how we devolved from the Supreme Court's pronouncements in <u>Rogers</u> and <u>Ferguson</u> to our "settled law" today.

*2.   Our Departure from the Standard of Reasonable Care*

In <u>Page v. St. Louis Southwestern Railway Co.</u>, 349 F.2d 820, 823 (5th Cir. 1965), we kept the standards for determining duty of care and causation distinct when we clarified that in FELA cases, the traditional standard for determining negligence applied:

> As to both attack or defense, there are two common elements, (1) negligence, i. e., the standard of care, and (2) causation, i. e., the relation of the negligence to the injury.  So far as negligence is concerned, that standard is the same--ordinary prudence--for both Employee and Railroad alike.

In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365 (5th Cir. 1969) (en banc), however, the standards became more nebulous.  We misinterpreted <u>Rogers</u>'s "any part, even the slightest" language to refer not to the evidence necessary to support a jury verdict, but to an employer's duty of care.  We concluded that "[s]light negligence, necessary to support an [sic] FELA action, is defined as 'a failure to exercise *great* care,' and that burden of proof, obviously, is much less than the burden required to sustain recovery in ordinary negligence actions."  <u>Id.</u> at 371.  Thus, in <u>Boeing</u>, we broadened the scope of a FELA--and by implication Jones Act--action insofar as we exposed employers to a higher degree of care and thus more liability than they otherwise would be exposed to in ordinary

11

negligence actions.

In the following years, we vacillated considerably in our pronunciations of the proper standard of care.  In <u>Perry v. Morgan Guaranty Trust Co. of New York</u>, 528 F.2d 1378 (5th Cir. 1976), we did not follow <u>Boeing</u>'s articulation of an employer's duty, applying instead the traditional standard of that of a reasonable person.  In <u>Perry</u>, the defendant appealed the district court's judgment for the plaintiff, maintaining that the court's finding of Jones Act liability was unsupported by the evidence.  We acknowledged that the amount of evidence required to support a jury verdict was slight, and held that an employer was guided by a duty of reasonable care.  <u>Perry</u>, a case involving solely the issue of sufficiency of the evidence, was therefore properly decided under the Supreme Court's decisions in <u>Rogers</u> and <u>Ferguson</u>.  In <u>Davis v. Hill Engineering, Inc.</u>, 549 F.2d 314 (5th Cir. 1977), <u>overruled on other grounds</u>, 688 F.2d 280 (5th Cir. 1982), however, we regressed. Although we held that a finding of Jones Act liability could be sustained upon evidence of only "the slightest negligence," in the very next sentence, we affirmed the district court's use of the reasonable person standard in determining Jones Act liability.  <u>Id.</u> at 329.  Interestingly, we cited <u>Sanford Bros. Boats, Inc. v. Vidrine</u>, 412 F.2d 958 (5th Cir. 1969) and <u>Perry</u> to support our holding that evidence of only the slightest negligence would suffice.  <u>Id.</u>  As noted, however, <u>Perry</u>, dealt solely with the issue of causation and did not adopt <u>Boeing</u>'s "slight negligence" standard.  Moreover, <u>Sanford Bros.</u>, which has often been cited

erroneously as the progenitor of our "slight negligence" standard, neither applied the "slight negligence" standard of care nor mentioned it in the course of its opinion, as the case concerned only the causation prong of the inquiry. That we mis-cited these cases, which both dealt solely with whether the evidence of the employer's negligence supported the jury verdict of Jones Act liability, demonstrates our early predilection to confuse the standard for sufficiency of the evidence and the standard of care a Jones Act employer owes to his employees.

Later, in Ivy v. Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir. 1978), modified on other grounds, 606 F.2d 524 (5th Cir. 1979) (en banc), cert. denied, 446 U.S. 956 (1980), we reverted back to our statement in Perry and held that a Jones Act employer is negligent "only if he fails to use *reasonable care* to maintain a reasonably safe place to work." We appear to have switched courses again, however, in Allen v. Seacoast Products, Inc., 623 F.2d 355, 361 (5th Cir. 1980), in which we held that "[t]he remedial nature of the Jones Act and its imposition of a higher standard of care on employers results in liability upon the showing of only 'slight negligence.'" (citing Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir. 1977)). Thereafter, we backtracked from this position to other prior one when we explicitly stated that "the same general negligence ('ordinary prudence') and causation standards apply to both employer and employee in Federal Employers' Liability Act (and, by extension, Jones Act) cases." Gavagan v. United States, 955 F.2d 1016, 1019

13

n.7 (5th Cir. 1992).

Our decisions imputing to Jones Act employers a higher duty of care than that imposed on all other employers stretch the Supreme Court's decisions in Rogers and Ferguson quite far. Our decisions discussing an employee's duty of care stretch farther. In Spinks v. Chevron Oil Co., 507 F.2d 216 (5th Cir. 1975), clarified on other grounds, 546 F.2d 675 (5th Cir. 1977), we not only reaffirmed the high standard of care to which we had bound Jones Act employers, but we also announced that a seaman-employee owes only a slight duty to protect himself. We stated, "The duty owed by an employer to a seaman is so broad that it encompasses the duty to provide a safe place to work. By comparison, the seaman's duty to protect himself . . . is slight." Id. at 223 (internal citations omitted).

Spinks, however, was not the definitive word on the issue. Just as we had done for the standard of care to be applied to maritime employers, we vacillated--often in the same opinion--as to the duty a seaman owed to look after his own safety, describing this duty as one of both reasonableness *and* slight care. For example, in Bobb v. Modern Products, Inc., 648 F.2d 1051, 1057 (5th Cir. 1981), we held that "the seaman has some duty to use reasonable care, even though that duty is slight." Similarly, in Ceja v. Mike Hooks, Inc., 690 F.2d 1191, 1193 (5th Cir. 1982), we wrote:

> In contrast to the broad duty imposed upon a vessel owner to supply a safe work place, the seaman's duty to protect himself is slight. Although the seaman has a duty to use reasonable care, this duty is

14

tempered by the realities of maritime employment 'which have been deemed . . . to place large responsibility for his safety on the owner.'

(citations omitted). One year later, in <u>Thezan v. Maritime Overseas Corp.</u>, 708 F.2d 175 (5th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1050 (1984), we relied on <u>Bobb</u> to define a seaman's duty of care, but neglected to include <u>Bobb</u>'s element of "reasonableness" in our definition. We held that "[w]hile the seaman's duty to protect himself is slight, the duty does exist." <u>Id.</u> at 180. Within the same paragraph, however, we did point out that although a seaman generally owes no duty to find the safest way to perform his work, "where it is shown that there existed a safe alternative available of which *he knew or should have known*, a seaman's course of action can be properly considered in determining whether he was negligent." <u>Id.</u> at 181 (emphasis added). Our design in <u>Thezan</u> may have been to continue holding seamen to a standard of ordinary prudence, but we failed to clearly articulate that intention. <u>See also Shipman v. Central Gulf Lines, Inc.</u>, 709 F.2d 383, 386 (5th Cir. 1983) (perpetuating the ambiguity).

We were quite explicit, however, in <u>Brooks v. Great Lakes Dredge-Dock Co.</u>, 754 F.2d 536 (5th Cir. 1984), <u>modified on other grounds</u>, 754 F.2d 539 (5th Cir. 1985), when we expressly rejected any definition of a seaman's duty of care that sounded in ordinary prudence. We held that the district court erred by instructing the jury that the injured party had a duty of ordinary care for his own safety and emphasized, somewhat erroneously, that "[t]his court . . . has consistently held that under the Jones Act, a seaman's

15

duty to protect himself is not ordinary care, but slight care."
Id. at 538.  Brooks's explicit proclamation did not last.  Our
clear waters were made murky in Pickle v. International Oilfield
Divers, Inc., 791 F.2d 1237, 1240 (5th Cir. 1986), cert. denied,
479 U.S. 1059 (1987), when we reinserted the element of
"reasonableness" in our definition of the standard to which seamen
are bound and held that the plaintiff's "duty to protect himself is
only a slight duty to use reasonable care."  Again, we raise
Gavagan to illustrate that, in 1992, we came full circle from where
we began in Page when we stated in rather explicit terms that the
standards of reasonable care guide the duties of both employers and
employees under the Jones Act.  Gavagan, 955 F.2d at 1019 n.7.

B.    Ordinary Prudence

The above survey of our decisions shows the confused start and
the diverted path leading to the "settled law" in this Circuit that
a Jones Act employer is bound by a greater-than-ordinary standard
of care towards its employees and that a seaman owes only a slight
duty to look after his own safety.  We agree with the Third Circuit
that nothing in the text or structure of the FELA-Jones Act
legislation suggests that the standard of care to be attributed to
either an employer or an employee is anything different than
ordinary prudence under the circumstances.  Fashauer v. New Jersey
Transit Rail Operations, Inc., 57 F.3d 1269, 1283 (3d Cir. 1995).
In addressing a seaman's duty to act with reasonable care, the
Third Circuit reasoned:

> By its very terms, the FELA provides that 'the
> damages shall be diminished by the jury in

16

> proportion to the amount of negligence attributable to such employee.'  45 U.S.C. § 53.  The statute does not distinguish between degrees of negligence; the statute does not say that the plaintiff only has a slight duty of care.  Under the statute, a plaintiff's recovery is reduced to the extent that he is negligent and that such negligence is responsible for the injury.  In such a situation, one must assume that Congress intended its words to mean what they ordinarily are taken to mean--a person is negligent if he or she fails to act as an ordinarily prudent person would act in similar circumstances.  Such a reading also is in accord with the FELA's pure comparative negligence scheme; and to adopt [plaintiff's] argument would be to abandon the clear dictate of the statute in favor of a policy decision to favor employees over employers.

Id.; see also Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67 (1943) (holding that "the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation").  Our sister circuits have similarly held.  See, e.g., Smith v. Tow Boat Serv. & Management, Inc., 66 F.3d 336 (9th Cir. 1995) (unpublished) (rejecting "slight care" standard); see also Karvelis v. Constellation Lines, S.A., 806 F.2d 49, 52-53 & n.2 (2d Cir. 1986), cert. denied, 481 U.S. 1015 (1987), (approving jury instruction informing that both employer and employee under Jones Act are charged with duty of reasonable care under the circumstances); Ybarra v. Burlington N., Inc., 689 F.2d 147, 150 (8th Cir. 1982) (approving jury instruction that railroad has duty to exercise reasonable care for protection of employees); Joyce v. Atlantic Richfield Co., 651 F.2d 676, 681 (10th Cir. 1981) (defining negligence as failure to use reasonable

17

care).

We find further support for our position in Supreme Court precedent.  In Urie v. Thompson, 337 U.S. 163, 174 (1949), the Court emphasized that the term "negligence" is to be defined "by the common law principles as established and applied in the federal courts." (internal quotations and citation omitted).  Although the Court's discussion refers specifically to § 51 "negligence," it would defy logic not to extend this reasoning to the term as used in § 53, which discusses a plaintiff's contributory negligence. See also Consolidated Rail Corp. v. Gottshall, 114 S.Ct. 2396, 2404 (1994) (holding that common law principles are entitled to great weight in FELA analysis unless expressly rejected in text of statute).

A seaman, then, is obligated under the Jones Act to act with ordinary prudence under the circumstances.  The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education.  The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable *seaman* in like circumstances.  To hold otherwise would unjustly reward unreasonable conduct and would fault seamen only for their gross negligence, which was not the contemplation of Congress.  See Robert Force, Allocation of Risk and Standard of Care Under the Jones Act:  "Slight Negligence," "Slight Care"?, 25 J. Mar. L. & Com. 1, 31 (1994).

By ascribing to seamen a slight duty of care to protect

themselves from the negligence of their employers, <u>Spinks</u> and its progeny, specifically <u>Brooks</u>, are repugnant to the principles we espouse today and are therefore overruled. Moreover, by attributing to Jones Act employers a higher duty of care than that required under ordinary negligence, <u>Allen</u> and its progeny repudiate the reasonable person standard and are also overruled.

**CONCLUSION**

In light of the foregoing discussion about the appropriate standards of care that should guide employers and employees under the Jones Act, we hold that the jurors in the instant case were improperly instructed as to Gautreaux's duty to exercise care for his own safety. We, however, express no opinion as to the proper apportionment of fault between the two parties. We accordingly AFFIRM the district court's determination of the amount of damages, VACATE the district court's judgment as to comparative fault and REMAND for proceedings to determine the comparative fault (if any) of the plaintiff and apportionment of the damages consistent with this opinion. In all other respects, we reinstate the panel's opinion.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.