IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30582
Summary Calendar
_____


JESSE JEMISON,

                    Plaintiff-Appellee-Cross-Appellant,

v.

FALCON DRILLING COMPANY, INCORPORATED; FALRIG OFFSHORE,
INCORPORATED,

                    Defendants,

FALCON DRILLING COMPANY, INCORPORATED,

                    Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Western District of Louisiana
(96-CV-982)
_____
March 27, 1998
Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

    Jesse Jemison was injured while working on an oil rig

operated by Falcon Drilling Co., Inc.  The district court found

both Jemison and Falcon Drilling Co. negligent and allocated the

_____

    [*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

damages for his injuries between the two of them.  The district court also found that the oil rig was seaworthy.  Falcon Drilling Co. appeals the district court's negligence finding, its allocation of fault, and its calculation of fringe benefits.  Jemison cross-appeals the district court's negligence finding, its allocation of fault, and its finding of seaworthiness.  We affirm.

## I.  BACKGROUND

Plaintiff-appellee-cross-appellant Jesse Jemison injured his back while working as a roustabout for defendant-appellant-cross-appellee Falcon Drilling Co., Inc. (Falcon) on Falrig 77, an offshore oil drilling rig located in the Gulf of Mexico.  His crew was moving casing, large hollow pipe used in the drilling operation, from the pipe rack to the drill floor.  Each piece of casing is designed to screw into another piece, end to end, to make one long, continuous piece of pipe.  The box end of the casing has interior threading, and the pin end has exterior threading.  The threads on the casing are protected from damage by thread protectors that screw into place.

Falcon's standard practice is to loosen the thread protectors when the casing is placed in the pipe rack in order to accurately measure the length of each piece of casing.  The thread protectors are then hand-tightened to allow them to be removed by hand when moved to the drill floor.  Jemison was

2

climbing on the stacked casing to renumber a piece of casing as part of Falcon's procedures. While climbing onto the stacked casing from the pin end, Jemison stepped on a loose thread protector, which spun, causing him to fall and injure his back.

In finding both Falcon and Jemison negligent, the district court made the following underlying findings of fact: The thread protectors had been backed off to measure the casing and then hand-tightened to facilitate quick removal later, following Falcon's chosen procedure. In order to facilitate its tallying system, Falcon specifically decided, after the thread protectors had only been hand-tightened, to require that the pieces of casing be renumbered, requiring a worker to climb onto the stacked casing. Knowing that thread protectors might be loose, Falcon determined that renumbering would be done with chalk in the middle of each piece of casing. Visual inspection cannot determine whether a thread protector is loose enough to spin when stepped upon, and Jemison was aware that the thread protectors were only hand-tightened and that they might be loose enough to spin. Jemison had to climb onto the casing in order to do his job. Falcon decided to use areas on the sides of the stacked casing for storage, which made those sides unavailable to climb onto the casing, and climbing the box end of the casing coming from the pin end requires one to walk under a suspended load, which is a greater known danger. The safest manner to climb onto the casing, given the configuration of the oil rig, was to climb

3

the pin end.  In climbing the pin end of the casing, it is expected and foreseeable that one will have to step upon a thread protector at some point.  Falcon knew that its workers climbed the pin end of the casing and never told anyone not to climb the pin end or not to step upon a thread protector, nor were thread protectors discussed at safety meetings.  Jemison made no effort to avoid thread protectors when climbing onto the casing and did not even look at them or check whether they were loose.  Jemison had nineteen years experience working as a roustabout on offshore oil rigs and is a big man, standing six feet eight inches tall and weighing around 320 pounds at the time of the accident.  Jemison did not finish high school and cannot read or write.  Falcon considered Jemison a good employee.

Jemison sued Falcon, and the claims on appeal are for negligence under the Jones Act, 46 U.S.C. app. § 688, and for unseaworthiness under general maritime law.  After a bench trial, the district court found both Falcon and Jemison negligent.  The district court allocated 85% of the fault to Falcon and 15% to Jemison.  The district court calculated Jemison's damages to be $426,543.28, which it decreased by 15% for Jemison's negligence to reach a total judgment of $362,561.79.  Jemison's damages included $83,153.20 for lost fringe benefits, which included found--the benefit of free room and board on the oil rig.[1]

---

[1]  Ballentine's defines found as "[r]oom and board." BALLENTINE'S LAW DICTIONARY 494 (William S. Anderson ed., 3d ed.

Lastly, the district court concluded that the oil rig was seaworthy because the loose thread protector was an "isolated incident" which did not make the oil rig unseaworthy.  Both Falcon and Jemison appeal.

---

1969); see also WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 897 (Philip Babcock Gove ed., 1961) (defining found as "free food and lodging in addition to wages").

## II.   STANDARD OF REVIEW

We review the district court's conclusions of law de novo and its findings of fact for clear error.  Joslyn Mfg. Co. v. Koppers Co., 40 F.3d 750, 753 (5th Cir. 1994).  "We must affirm the district court's findings unless we are left with the firm and definite conviction that a mistake has been made."  Id. at 761.  In admiralty, negligence and causation are questions of fact.  Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

## III.   DISCUSSION

The parties' appeals boil down to the following issues: did the district court err in (1) finding Falcon negligent, (2) finding Jemison negligent, (3) allocating fault between the parties, (4) calculating found, and (5) finding seaworthiness. Each issue will be discussed in turn.

### A.   Falcon's Negligence

In Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc), this court has recently redefined the negligence standard for both an employer and a seaman under the Jones Act, 46 U.S.C. app. § 688.  Gautreaux overruled our prior case law, which had placed "a greater-than-ordinary standard of care towards its employees" upon employers and had placed "only a slight duty to look after his own safety" upon a seaman.  Id. at 338.  Both an employer and a seaman are subject to an ordinary

6

standard of care defined by the reasonable person under similar circumstances.  Id. at 338-39.  Explicitly applying the Gautreaux standard,[2] the district court found Falcon negligent.

In determining Falcon's negligence, the district court found

> that the practice of loosening each and every thread
> protector in order to get an exact measurement of the
> casing and then choosing to have the thread protectors
> put back in only hand-tight so as to facilitate quick
> removal within the casing operation and yet having a
> system that requires renumbering such that a man had to
> climb back on top of the casing to renumber those
> pieces of casing and doing this in such a fashion that
> the company was aware and in fact anticipated and
> expected that its men would climb up the pin end of the
> casing to get to the top of the casing and as this
> Court finds that the evidence shows that no one at
> Falcon Drilling ever told Mr. Jemison not to climb on
> the pin end, and in fact they were aware he was doing
> so, never reprimanded him but rather saw him to be a
> good hand, that the defendant failed in providing Mr.
> Jemison a safe place to work and was negligent in the
> manner that it allowed the job to be performed and that
> it chose to have the job be performed; . . . .

Relying upon Schlichter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir. 1961), Falcon argues that the district court should not have found it negligent because its practices were the customary and accepted practices in the industry.  The fact that these practices were the accepted custom in the industry was before the district court, but as stated in Schlichter, "compliance with the customs and practices of an industry is not

---

[2]  In its oral findings and conclusions, the district court cited the panel decision in Gautreaux, but it clearly stated the holding on the proper standard from the en banc decision and noted that the case was decided en banc, thus referencing the en banc decision.

7

in itself due care." <u>Id.</u> at 804. Here, unlike in <u>Schlichter</u>, evidence was presented and factual findings were made that Falcon's practices, while possibly in compliance with industry customs and practices, did not constitute ordinary prudence under the circumstances, which is the proper test. <u>See</u> <u>McCormack v. Noble Drilling Corp.</u>, 608 F.2d 169, 174 n.8 (5th Cir. 1979) (applying the reasonable seaman standard). Additionally, Falcon argues that the customary practice was ordinary prudence here because Jemison was experienced and another method of numbering would not be feasible because of the limited education of many of its workers. The district court had these arguments before it and considered them in considering the circumstances, but it still found Falcon negligent.

Falcon also argues that the district court should not have considered the availability of alternative methods in determining whether it was negligent. However, the available methods to do an activity are relevant to what is reasonable under the circumstances, making the district court's consideration of the alternatives proper. Falcon never argues, below or on appeal, that the alternative methods are particularly burdensome or unfeasible, making their adoption unreasonable under the circumstances.[3]

---

[3] Falcon did note that one witness described one alternative method as confusing, but the witness stated that he did not know if using the original numbering would work. He then went on to say, "We always back-numbered them. So it would

8

Falcon does not point to anything in the record or legal authority which would cause us to find that the court committed clear error in finding Falcon negligent. Testimony was presented that the most expeditious, and sometimes only feasible, way to climb onto the casing is by the pin end; that thread protectors were only hand-tight and could spin; that climbing on the pin end inevitably led to stepping upon a thread protector; and that Falcon knew this and chose to use a procedure which required workers to climb onto the casing. According to other testimony, workers could avoid the thread protectors, but the district court found that this testimony lacked credibility. See Orduna S.A. v. Zen-Noh Grain Corp., 913 F.2d 1149, 1154 (5th Cir. 1990) ("The credibility determination of witnesses . . . is peculiarly within the province of the district court."). Looking at the credible evidence, the district court's finding that Falcon was negligent does not constitute clear error.

**B.   Jemison's Negligence**

In Gautreaux, we held that "[a] seaman . . . is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment

---

probably be confusing, you know, to try to use the original number." This testimony only suggests that the alternative method would be more confusing than renumbering and not that it would be so confusing that the workers could not do it or that with familiarity any confusion would be alleviated. Change will always cause some confusion. Additionally, the district court expressly found that this witness's testimony lacked credibility.

9

include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education." 107 F.3d at 339. Applying this standard, the district court found Jemison negligent.

The district court based this negligence finding upon the facts that Jemison was aware that the thread protectors can be sufficiently loose to spin when stepped upon and "that Mr. Jemison did not attempt to avoid the thread protectors, nor to check the thread protectors, nor to deal with the thread protectors in any fashion because he assumed they were tight." It found that a reasonable seaman would have exercised more care, especially considering that Jemison weighed 320 pounds and that such weight might cause a thread protector to spin when stepped upon.

Jemison argues that he was not negligent because he climbed onto the casing in the safest, and only, manner available--by climbing the pin end of the casing. He does not challenge the district court's findings that he did not even attempt to avoid thread protectors or pay attention to them in climbing the casing. The district court's finding of negligence is based upon the fact that, although Jemison climbed onto the casing from the only feasible location, he paid no heed whatsoever to the possibility, of which he was aware, that some thread protectors were loose enough to spin, a danger that the reasonable seaman would have taken some precaution against. Based upon our review

10

of the record, the district did not clearly err in finding Jemison negligent.

**C.   Allocation of Fault**

The district court allocated 85% of the fault for Jemison's injuries to Falcon and 15% to Jemison.  Jemison argues that the allocation of fault was in error, claiming that he was not negligent and that, even if he was negligent, the evidence does not support assessing him 15% of the fault.  Falcon similarly argues that the allocation of fault was in error, claiming that it was not negligent and that the evidence does not support assessing it 85% of the fault.  Additionally, Falcon argues that it was incorrectly allocated 85% of the fault because the district court held Jemison to a lower standard of care than our recent decision in Gautreaux requires.

Taking the last argument first, Falcon argues that the district court failed to find that Jemison had a duty to use the safest method to perform his work.  Noting that our prior case law held that a seaman's duty to protect himself was slight and did not include a duty to find the safest way to perform his work, see, e.g., Spinks v. Chevron Oil Co., 507 F.2d 216, 223 & n.11 (5th Cir. 1975), amended on other grounds by 546 F.2d 675 (5th Cir. 1977), Falcon argues that, as a result of Gautreaux overruling Spinks and imposing a duty of ordinary care, "a seaman has a duty to find the safest method to perform his work and must

11

utilize the known safe method if that is what a reasonable seaman in like circumstances would do." Based upon this argument, Falcon claims that the district court did not hold Jemison to this safest method standard and therefore it made a legal error in assessing 85% of the fault against it.

The district court applied the standard of the reasonable seaman under similar circumstances. The availability of a known safer method or a discoverable safer method only goes to the circumstances against which we measure the conduct of the plaintiff under the reasonable seaman standard. Neither imposes a greater duty upon a seaman. The district court found that Jemison could have acted in a safer manner and, therefore, took these relevant circumstances into consideration in its decision. Thus the district court committed no legal error, which would allow us to give less than our usual deference to the district court's factual finding on the allocation of fault. See Johnson v. Hospital Corp. of Am., 95 F.3d 383, 395 (5th Cir. 1996) ("[T]he 'clearly erroneous' standard of review does not insulate factual findings premised upon an erroneous view of controlling legal principles.").

As discussed above, the district court's findings of negligence by Jemison and Falcon are supported by the record. Likewise, the district court's allocation of fault is supported by the record. The district court found that Falcon's negligence played the major role in causing Jemison's injury and stated, "It

12

is not reasonable that the company should be able to create a situation that is going to place its employees at risk and then say, 'Take care of yourself,' when there are alternative means by which it could be done." In the district court's view, Falcon's control of the work environment and its decision to use a system that placed its workers at risk by requiring that they climb onto the casing to renumber each piece made it more at fault than Jemison.

To support its argument that it should not bear 85% of the fault, Falcon points to testimony from workers that the pin end of the casing could be safely climbed if a worker was careful. The district court's findings support the fact that the pin end of the casing could be <u>successfully</u> climbed, but it found that the hand-tight thread protectors could not be avoided and that hand-tight thread protectors may spin when stepped upon. Because Falcon's decision to only hand-tighten thread protectors while requiring workers to climb onto the casing created the dangerous situation which could injure a seaman even without his negligence contributing to the accident, the district court allocated 85% of the fault to Falcon.

Jemison argues that he performed his duties in the safest manner possible under the circumstances and therefore should be assessed less than 15% of the fault, if any. This argument is basically a challenge to the district court's finding that he was negligent, and we reject it as we did above. The findings of

13

fact are clear that Jemison failed to exercise due care and that he did not climb unto the casing in the safest manner possible because he took no precautions against the known danger, as a reasonable seaman would have.

After a review of the record, we are not left with anything resembling a "firm and definite conviction that a mistake has been made." Johnson, 845 F.2d at 1352. Therefore, the district court's factual findings on the allocation of fault between Falcon and Jemison are not clearly erroneous.

## D.    Calculation of Found

The district court's judgment included $83,153.20 for lost fringe benefits, "which encompasses . . . the loss of meals while on the rig." The parties stipulated in open court that "the estimated value of the food is $3,500.00" in relation to the lost fringe benefits. Falcon now argues that the district court's reliance upon this number was error because it represents the cost to Falcon to provide meals and found should be calculated based upon the cost to the seaman to replace the lost meals.

Falcon argues that it objected to the use of the $3500 amount in the following exchange between Falcon's counsel and the district court:

> MR. HYMEL:[4]  . . . I looked at the number [Jemison's counsel] had for Falcon's cost of food, and that number accurately reflects Falcon's cost of food.

---

[4]  Falcon's counsel.

14

THE COURT: Okay. That does not help me, however, if in fact you intend to argue that it is a fringe benefit and it should be calculated to the fringe benefit package and therefore should be extended out to give the value of his damages. If you in fact want to have that offset by the amount you argue it would have cost him to have provided that for himself onshore, then I would need to know those figures; and I would need that amount calculated and carried forward. Matters not to me. That's what I understand from your argument, if you could not convince me that he shouldn't get it at all.

MR. HYMEL: That's my point. I'm not saying that's the appropriate calculation. I still think it's the calculation that it cost him. You said that you weren't going to buy that, which is fine. The reason I didn't get the offset calculation was because we have not determined the maintenance rate yet; and if we get that number, I'm sure we can call [either expert] and have him plug that number in.

THE COURT: You are saying you are not going to dispute plaintiff's figures as to the costs that it actually cost Falcon to provide Mr. Jemison his room [and] board on board the rig?

MR. HYMEL: That's correct.

THE COURT: What happens with those figures remains to be seen.

MR. HYMEL: Based on your decisions, correct.

Despite Falcon's counsel's suggestion in the above exchange that the district court had already ruled, this exchange shows that the district court had yet to rule upon the method to calculate found and that the issue was currently open. A review of the record finds no ruling by the district court upon the method of calculating found.[5]

---

[5] According to docket entry no. 70, the district court expressly deferred ruling upon Falcon's "Motion in Limine"

15

The very next day in trial, Falcon's counsel responded, "That's correct" to the district court's direct question: "I think the parties have agreed that the estimated value of the food is $3,500.00. Am I correct, gentlemen?" The affirmative response by Falcon's counsel to the district court's inquiry indicates that the parties, or at least Falcon, were stipulating to the "value of the food" without any reservation or qualification. "It is well settled that stipulations of fact fairly entered into are controlling and conclusive, and courts are bound to enforce them." A. Duda & Sons Coop. Ass'n v. United States, 504 F.2d 970, 975 (5th Cir. 1974). Falcon stipulated to the value of food in relation to fringe benefits and cannot now challenge this stipulation.[6]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

requesting the court to calculate found based upon Jemison's and not Falcon's cost. The district court had ruled that Falcon's costs were discoverable, but this order did not make any ruling as to the method of calculating found.

[6] Having affirmed the district court's judgment on the issue of negligence, we need not reach the appeal of the unseaworthiness claim.

16