801 So.2d 653 (2001)
Mack ATES
v.
MALLARD BAY DRILLING, INC.
No. 01-0836.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*654 Frederick T. Haas III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP, New Orleans, LA, Counsel for Mack Ates.
Patrick J. Veters, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Counsel for Mallard Bay Drilling, Inc.
*655 Court composed of SYLVIA R. COOKS, OSWALD A. DeCUIR, and MICHAEL G. SULLIVAN, Judges.
DECUIR, Judge.
Mack Ates sued his employer, Mallard Bay Drilling, under the Jones Act, 46 U.S.C.App. § 688, and general maritime law after sustaining injuries aboard a vessel on which he was working. The trial judge granted judgment in favor of Ates on both causes of action and awarded damages totaling $797,254.24. Both parties have appealed. We affirm the judgment rendered below.

FACTS
Ates was employed by Mallard as a rig mechanic. He was assigned to the New Iberia mechanic shop where he spent approximately half his time working on rig equipment in the shop, and the remainder of his time working on equipment on vessels docked in the canal behind the shop or located in navigable waters. On November 21, 1993, Ates was on light duty status with Mallard while he recovered from arthroscopic knee surgery and back pain from a previous accident. His supervisor, Cleve Labit, gave him some parts to be delivered to Mallard Rig No. 56, which was located in Lake Barre. The parts were for the repair of a mud pump, a job requiring many hours and heavy manual labor, which was ordinarily part of Ates' responsibilities, but for his light duty status. Nevertheless, according to Ates' testimony, Labit told him to help out with the repair while he was on board the rig.
Ates, in fact, did assist in the repair work, and he testified that he was able to do the work expected of him. However, while helping the chief mechanic carry what is described in the accident report as a 150-pound metal mud slide, he fell and injured his back. The accident occurred when Ates picked up one end of the slide after Wesley Webster, the chief mechanic and Ates' superior on the vessel, picked up the other end and gestured for Ates' assistance. Webster was in position to walk forward with the slide, leaving Ates with no option but to walk backwards in the very cluttered and narrow work space. Ates then fell into a sitting position when he bumped into something.
Ates continued working for three to four hours that evening, then left the rig at midnight for a previously scheduled doctor's appointment the following day. By the time he arrived at the physician's office, Ates was in so much pain that the doctor decided to revoke his light duty status and told him that he could not return to work at that time. He was instructed to attend physical therapy, which he did for two months. Eventually, he saw Dr. Thomas Whitecloud, the chairman of the department of orthopaedic surgery at Tulane Medical School. Dr. Whitecloud diagnosed preexisting degenerative disc disease that was aggravated by the November 21 fall. After diagnostic testing, Dr. Whitecloud performed surgery which consisted of a laminectomy, discectomy, and fusion and the insertion of cages and rods to solidify and support the fused area of the spine. The surgery was intended to relieve Ates' back and leg pain and was not intended as a cure that would allow him to return to the heavy manual labor of the oilfield. In fact, Ates has not returned to work since November 21, 1993.
Subsequent to the 1994 surgery by Dr. Whitecloud, Ates continued to experience back pain, though not as severe, and he developed a host of abdominal problems related to the medications he takes for the treatment of his pain. Numerous physicians have been consulted in his care. Ates has willingly participated in physical therapy and water therapy. He has completed *656 a ten-session work conditioning program. A functional capacity evaluation showed a 27% whole body impairment rating with strict work restrictions. All of the medical testimony in the record indicates that Ates had valid complaints and was not exaggerating his pain. Finally, in 1997, after the functional capacity evaluation, his condition was described as chronic and he was released from medical care with the understanding that he would return as needed for pain management. At that point, Ates had reached maximum medical improvement.

LIABILITY
In its reasons for judgment, the trial court first addressed the seaman status of Ates. Based on unrefuted evidence, the court concluded that Ates was a Jones Act seaman because he was assigned as a mechanic for the entire fleet of Mallard vessels and no others, he performed maintenance and repair jobs on those vessels, which work was essential to the drilling function of the vessels, and he spent approximately half his time either on the vessels or traveling thereto. The trial judge noted that Ates was subjected to the same risks as traditional seamen while on the Mallard drilling rigs. In reaching its conclusion, the trial court relied on Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) and Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986). We agree with the trial court's analysis of the seaman status of Ates and conclude that he was a Jones Act seaman at the time of his November 21, 1993, accident.
In ruling against Mallard, the trial court found both unseaworthiness and negligence. "An owner of a vessel has an absolute duty to furnish a seaworthy vessel, and a breach of that duty gives rise to a claim for general damages." Vendetto v. Sonat Offshore Drilling Co., 97-3103, pp. 14-15 (La.1/20/99), 725 So.2d 474, 481. Both a defective condition of the vessel and an improperly trained crew can constitute conditions that render the vessel unseaworthy. Id. The Mallard Rig No. 56 was found to be unseaworthy based on the fact that the deck area, which was Ates' work space, was cluttered and obstructed. The deck was cluttered primarily with parts of the mud pump which Ates, Webster, and their co-worker had disassembled. Webster, as the chief mechanic, was responsible for the conditions under which his subordinates worked, and if the deck should have been cleared or if Ates needed assistance in walking backwards through the clutter, then Webster had to provide those safety measures. Without such safety precautions in place, and given the cluttered condition of the deck, the vessel was unseaworthy.
Mallard, through its employee, Webster, was also found to be negligent in its direction of the job Ates was performing. First, Webster directed Ates to do work in violation of his light duty restrictions. Second, Webster directed Ates to assist him in carrying a mud slide backwards, yet gave him no direction or assistance in navigating his path through the cluttered deck so that he would not trip. The trial judge considered these actions to be negligent and in violation of Mallard's duty to provide a working environment free from unreasonable danger.
Louisiana appellate courts apply the manifest error-clearly wrong standard of review of facts in general maritime and Jones Act cases. Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89; Derouen v. Mallard Bay Drilling, LLC, 00-1268 (La.App. 1 Cir. 6/22/01), ___ So.2d ___, 2001 WL 700789. The criteria for review of a factual finding are whether there is a reasonable factual basis *657 in the record to support the finding and whether the record establishes that the finding is not manifestly erroneous. Id. We have reviewed the record in its entirety and conclude that a reasonable factual basis exists to support the conclusions reached by the trial court. Further, our review of the evidence presented does not indicate that the trial court's findings were clearly wrong or manifestly erroneous. Accordingly, we affirm the findings of negligence and unseaworthiness on the part of Mallard Bay Drilling.
On the issue of comparative fault, the trial court cited the controlling case of Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997), and noted that both the employer and the employee are bound by a standard of ordinary prudence under the circumstances. In finding no comparative fault on the part of Ates, the trial court concluded that he was unable to look out for his own safety because he was specifically directed to perform the job at hand in a certain way, which was clearly unsafe. Ates could choose only between picking up one end of the heavy mud slide and walking backwards with it through the cluttered deck or refusing to assist his chief mechanic at all and risk "getting run off the job." Both the noise of the nearby pump and the immediacy of the situation (Webster already had one end of the slide in his hands) prevented Ates from communicating any hesitancy he may have had about the job he was instructed to do.
This case is similar to the Derouen case, cited above, which examined the comparative fault of a Mallard employee who was injured in an accident while on the job. Derouen was working under the direct supervision and instruction of his supervisor and had no discretion in the performance of the task at hand. The court found no comparative fault and noted that Derouen did nothing to cause the accident and did not violate any safety precautions.
In citing Gautreaux, the trial judge noted that "the employer and the employee are not always on an equal footing." Mallard argues that this language reveals the trial court actually applied pre-Gautreaux law to this case, which essentially held the employer to a much higher standard of care than the employee. To the contrary, our reading of the lower court's interpretation of Gautreaux reveals, and we believe rightly so, that certain subjective factors must be considered when analyzing the seaman's actions under an otherwise objective standard of ordinary prudence:
A seaman, then, is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable seaman in like circumstances.
Gautreaux, 107 F.3d 331, 339. In discussing the working environment on the vessel at the time of the accident and the interaction between Ates and Webster, the trial judge was clear in his intent to view Ates' actions under the rule of law enunciated in the Gautreaux decision. Ates was working not only with the assistance of, but under the direct instruction and supervision of Webster; while he certainly had a duty to provide for his own safety, he also should have been able to rely on Webster to watch out for his safety. After all, Webster was his supervisor and had a clearer view of the cluttered pathway Ates was attempting to negotiate backwards. Our review of the record reveals a reasonable *658 factual basis for the conclusion of the trial court, and we find no manifest error in the trial judge's decision on the issue of comparative fault.

DAMAGES
The trial court awarded damages in the following amounts:

Maintenance and cure
 (11/22/93-2/26/97) $ 23,820.00
Medical expenses-
Past- $123,583.70
Future- $ 45,000.00
Lost wages
Past- $256,667.13
Future- $148,183.41
General damages
Pain and suffering- $125,000.00
Future pain and suffering- $ 75,000.00
TOTAL- $797,254.24

In this appeal, Mallard contends the trial court erred in its award of several elements of damages. First, Mallard argues that because Ates' 1994 surgery by Dr. Whitecloud was elective and was intended merely to reduce his pain, Ates had actually reached maximum medical cure prior to the surgery. By contrast, the trial court found that he did not reach maximum medical cure until February 1997, when he had completed the work conditioning program and was released by Dr. Jeanette Salone, a physical medicine and rehabilitation specialist. The date a plaintiff reaches maximum medical cure (as opposed to ongoing pain management) is essential to a determination of the duration of the employer's liability for cure. Maintenance and cure is an obligation on the part of a vessel owner to provide food, lodging, and medical services to seamen who are injured during service to the ship. Baxter v. Sonat Offshore Drilling, Inc., 98-1054 (La.App. 1 Cir. 5/14/99), 734 So.2d 901.
While it is certainly true that Dr. Whitecloud's testimony indicates that he did not intend to send Ates back into oilfield employment after surgery, it is likewise true that Ates sought aggressive medical care in an effort to get better. The work conditioning program in itself was designed to improve Ates' medical condition, raise his pain tolerance, and give him greater flexibility and ability to move. Only after the program failed did the medical care providers say, essentially, "this is all that can be done for you." We find no error in the trial court's conclusion that Ates reached maximum medical cure in February of 1997.
Next, Mallard contests the award of $45,000.00 in future medical benefits. There was no direct evidence on the issue of future medical costs, but the trial judge extrapolated figures based on the cost of past procedures and medications that Ates is prescribed on an ongoing basis. In fact, at the time of discharge by Dr. Salone, Ates was on six different prescription medications. Given the unrefuted evidence of Ates' continuing pain and unresolved stomach ailments, we find no error in the trial court's decision to award future medical expenses in the amount of $45,000.00. Additionally, we will not increase the award as requested by Ates.
Likewise, we find no manifest error in the $200,000.00 general damage award. It is true that Ates had a chronic condition known as degenerative disc disease prior to his accident on Mallard Rig No. 56; however, he was able to work at a heavy manual labor job and manage his periodic bouts of back pain prior to the accident. We believe the award is reasonable and well-supported by the evidence. For the same reason, we decline to increase the award of general damages as requested by the plaintiff in his appeal.
Economic damages awarded for past and future lost income were also well-supported *659 by the evidence. Ates presented the testimony of an economist, as well as the testimony of a family friend, Chris McClanahan, the owner of a drilling company, for whom Ates could have worked but for his accident. McClanahan testified that he had hired several of Mallard's hands and that he paid them competitive salaries of a certain amount. This testimony was further corroborated by Ates' former coworker, who had indeed left Mallard to work for McClanahan. All of this evidence was unrefuted by Mallard. We find, as did the trial court, that the testimony was credible and that the award was reasonably supported in the record. Additionally, we find no merit to the contention raised by Ates that the economic damages should be increased. The wage loss figures were supported by the economist's testimony, and the asserted loss of stock ownership is not a compensable element of damages. Accordingly, we affirm the award of economic damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mallard Bay Drilling, Inc.
AFFIRMED.