822 So.2d 869 (2002)
Sadat MUHAMMAD
v.
DIAMOND OFFSHORE COMPANY.
No. 02-0172.
Court of Appeal of Louisiana, Third Circuit.
July 10, 2002.
Rehearing Denied August 21, 2002.
*871 Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, LA, for Plaintiff/Appellant Sadat Muhammad.
Cameron B. Simmons, Jeanerette, LA, for Defendant/Appellee Diamond Offshore Company.
Christopher Bremer Siegrist, Houma, LA, for Defendant/Appellee Diamond Offshore Company.
Linda Jane Nelson, Lambert & Nelson, New Orleans, LA, for Defendant/Appellee Lambert & Nelson.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, Sadat Muhammad, appeals the trial court's judgment finding that he failed to prove negligence on the part of the defendant, Diamond Offshore Company, and the denial of his claim of unseaworthiness. Diamond answered the appeal seeking reversal of portions of the trial court's judgment. We affirm in part and reverse in part.

FACTS
On March 8, 1997, Muhammad sustained injuries as a result of a fall while traversing the stairs leading from the port pipe rack deck to the air conditioner deck on the Rig OCEAN LEXINGTON. Muhammad, a roustabout for Diamond, was carrying a five-gallon bucket of industrial soap in one hand and a long-handled brush in the other as he approached the stairs. He fell down the stairs as he was attempting to step over a four and one-half inch coaming located at the top of the stairs. Shortly thereafter, Muhammad filed suit against Diamond seeking damages pursuant to the Jones Act, 46 U.S.C.App. § 688, and the general maritime law claim of unseaworthiness. A petition of intervention was filed by Muhammad's former attorneys, Lambert & Nelson, P.L.C., seeking attorney's fees as a result of a contingency fee contract entered into between them and Muhammad. This matter was severed from the trial of the main demand.
Following a bench trial on the merits, the trial court held that Muhammad was solely at fault in causing the accident and that Diamond did not breach any duty owed to him. It further held that he failed to prove that an unseaworthy condition of the OCEAN LEXINGTON was a proximate cause of his accident and subsequent injuries. The trial court also held that Diamond improperly withheld maintenance and cure payments from Muhammad and that he had not yet reached maximum medical recovery due to the fact that further surgery was scheduled on his lumbar spine. It awarded Muhammad maintenance of $15 per day from November 8, 1997 until he reached maximum medical recovery, past medical expenses of $59,599.53, and future medical expenses of $46,309. Based on a joint motion of the parties, Muhammad's daily rate of maintenance was amended from $15 to $20 per day.
A judgment was rendered on May 14, 2001, which awarded Muhammad the above stated damages, and also awarded him pre-judgment judicial interest on his past and future medical expense awards from March 8, 1997, and judicial interest on his maintenance award from November 8, 1997, until he reached maximum medical recovery. This appeal by Muhammad followed. Subsequent to his motion for appeal, an order was issued staying execution *872 of the May 14, 2001 judgment pending this appeal. A hearing on the award of attorney's fees was held, after which the trial court awarded Muhammad attorney's fees in the amount of $15,000.

ISSUES
Muhammad raises six assignments of error on appeal. He argues that the trial court erred in excluding evidence of Diamond's violation of applicable Occupational Safety and Health Act (OSHA) regulations and in relying on Vendetto v. Sonat Offshore Drilling Co., 97-3103 (La.1/20/99), 725 So.2d 474, and Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997), in finding Diamond free from fault. He further argues that the trial court erred in failing to find the OCEAN LEXINGTON unseaworthy, in failing to apply the doctrine of momentary forgetfulness, and in failing to award him general and economic damages as a result of his cervical discectomy and his lumbar fusion.
Diamond answered Muhammad's appeal, arguing that it was aggrieved by the trial court's award of future medical expenses and pre-judgment interest on those expenses, and by the trial court's award of attorney's fees to him based on a finding that it wrongfully terminated his maintenance and cure benefits.

MOTION TO REMAND
Initially, we note that Muhammad has filed a Motion to Remand asking that we remand this matter to the trial court for further proceedings in light of Chao v. Mallard Bay Drilling, Inc., 534 U.S. 235, 122 S.Ct. 738, 151 L.Ed.2d 659 (2002). Chao dealt with the applicability of OSHA regulations to a vessel which had not been inspected by the Coast Guard and in which it had not issued affirmative regulations covering the working conditions at issue. However, we need not remand this matter, since the trial court never reached the issue of whether the coaming at issue was defective. Rather, the trial court held that Muhammad failed to carry his burden of proving that the coaming was the proximate cause of his accident. Since the issue of whether the coaming was defective was never reached, a remand of this matter is not called for. Additionally, the report of Diamond's expert in naval architecture and marine surveying, Sheldon Cass, states that the OCEAN LEXINGTON requires yearly inspections in order to maintain a current U.S. Coast Guard certificate. Thus, this is a vessel which has been inspected by the Coast Guard. Accordingly, the motion to remand is denied.

JONES ACT
Jones Act negligence was discussed by the supreme court in Foster v. Destin Trading Corp., 96-0803, pp. 3-4 (La.5/30/97), 700 So.2d 199, 208 (on rehearing):
The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C.App. § 688 (1994). The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. See id. Such negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. See Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir.1977); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-21, at 312 (2d ed.1994). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable *873 care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-36 (5th Cir.1997). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. However, a seaman need only present "slight evidence" that his employer's negligence caused his injuries in order to reach the jury or to be sustained upon appellate review. Id. at 334-35. The employer can introduce evidence of the seaman's own negligence to reduce damages through application of pure comparative fault principles. Like his employer, the seaman must meet the standard of ordinary prudence by acting as a reasonable seaman would act under the same circumstances. Id. at 339.
The manifest errorclearly wrong standard of review applies in Jones Act and general maritime cases. Ates v. Mallard Bay Drilling Inc., 01-836 (La.App. 3 Cir. 12/12/01), 801 So.2d 653, writ denied, 02-0100 (La.3/15/02), 811 So.2d 915.
After reviewing the record in its entirety, we find that the trial court was presented with differing views of the evidence pertaining to the cause of Muhammad's fall. Thus, it was reasonable for the trial court to find that Muhammad failed to act as a reasonable seaman would under like circumstances and that he was the sole cause of the accident.
Muhammad testified that he was carrying a five gallon-plastic bucket of industrial soap in one hand and a four-foot-long brush in the other hand when he attempted to descend the stairway. He was unsure which hand held which item. He stated that he intended to step over the coaming and then grasp the stair railing with the hand holding the brush. Before he could do so, Muhammad testified that he fell as he brought his trailing foot over the coaming. However, in his deposition, he was unsure of the specific cause of his fall, stating that the brush he was carrying became caught in the coaming. After his fall, the bristle part of the brush was found caught in the coaming at the top of the stairs, while the handle was found at the bottom of the stairs with him. Muhammad testified that he had been up and down these stairs before and that he was aware of Diamond's policy requiring him to always hold onto a railing with one hand while ascending or descending stairways. However, he denied being told that he could not traverse the stairs while carrying something in both hands.
Diamond presented evidence pertaining to its policy requiring employees to hold onto railings with one hand any time they were using stairways on the OCEAN LEXINGTON. Its safety manual specifically states, "Traveling up and down ladders or stairways require the employee to use the handrails." Diamond employees, Oliver Gandy and Timothy Taylor, both testified that its policy requires an employee to maintain one hand on the handrail at all times while traversing stairways on the rig. They further stated that Diamond's policy required an employee carrying a brush and bucket to place the brush in the bucket before using a stairway. Jerry McHenry, Diamond's safety representative on the rig at the time of the accident, verified its policy required employees to keep one hand on a handrail at all times.
Gandy testified that Muhammad admitted not having a hand on the handrail at the time of his fall and that he had attended a safety meeting minutes earlier, at which this policy was discussed. Gandy further stated that he has never had a problem with the stairs and that he first grasps hold of the handrail before stepping over the coaming and proceeding down the stairs. Taylor, who was on the air conditioner *874 deck, testified that he saw Muhammad approaching the stairs with the bucket and brush in his hands and then saw him falling, but that he did not see what caused him to fall. Both stated that the bucket and brush handle were found on the air conditioner deck with Muhammad, but the brush itself was found at the top of the stairs behind the coaming. McHenry recalled that Muhammad stated that he was not using the handrail at the time of the accident.
Considering the foregoing evidence, we cannot say that the trial court was manifestly erroneous in finding that Muhammad was the sole cause of his accident. Accordingly, the judgment of the trial court denying his claim for damages pursuant to the Jones Act is affirmed. This assignment of error is dismissed as being without merit.

UNSEAWORTHINESS
Pursuant to the general maritime law, a seaman is entitled to work on a seaworthy vessel. Thus, a vessel owner has an absolute duty to furnish a seaworthy vessel, and a breach of that duty will give rise to a claim for general damages. Vendetto v. Sonat Offshore Drilling Co., 97-3103 (La.1/20/00), 725 So.2d 474. An action for unseaworthiness arises if a seaman alleges that he was injured as a result of a defective condition of the vessel, its equipment, or its appurtenances. Id. The unseaworthiness of a vessel is a question of fact, which will be determined on a case-by-case basis. Id.
There is a more stringent causation requirement for claims of unseaworthiness than Jones Act claims. In an unseaworthiness claim, the plaintiff must show that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. Phillips [v. Western Company of North America], 953 F.2d [923,] at 928 [(5th Cir.1992)].
Derouen v. Mallard Bay Drilling, LLC, 00-1268, p. 7 (La.App. 3 Cir. 6/22/01), 808 So.2d 694, 705.
The trial court denied Muhammad's claim of unseaworthiness, finding that he failed to meet the threshold evidentiary standard for proving such a claim. It held that the cause of Muhammad's accident was likely something other than the placement of the coaming.
After reviewing the evidence, we find that the trial court was presented with contradictory evidence on this issue. Therefore, we cannot say that it erred in denying Muhammad damages based on his general maritime law claim of unseaworthiness.
David Cole, an expert in admiralty and maritime matters, testified that the coaming represented a tripping hazard because it did not allow a person descending the steps to progress down them as they would any other stairs. He opined that the coaming presented a vertical barrier requiring Muhammad to lift his foot up and over the four inch barrier and then step down a distance greater than the expected twelve inches in order to reach the first tread of the stairway. Although he admitted that coamings are used as pollution control devices on board vessels, Cole recommended that it be moved closer to the source of the possible oil spill, so that a person traversing it would not have to do so while also attempting to descend a stairway. Based on his understanding of what had occurred, Cole testified that the coaming was the cause of Muhammad's fall.
Cole further testified that the stairway's handrails presented a deficiency in their *875 design since there was a gap between them and the pipe rack deck's guardrail. He stated that the handrails should have been constructed so that they joined the top railing of the guardrail, which would allow a continuous railing for a person at the transition point between the deck and the stairway. As constructed, he stated that the stairway presented nothing for the person descending the stairway to grab a hold of while he was taking the exaggerated step up and over the coaming in order to access the stairway. However, Cole testified that there were no regulations specifying the construction of handrails or pertaining to the placement of coamings. He further testified that Muhammad had an obligation to recognize and safely negotiate the hazard and that a seaman has an obligation to hold onto a railing whenever possible. Cole stated that he would not condone Muhammad traversing the coaming and the stairway while holding a bucket in one hand and a brush in the other.
Cass testified that neither the coaming nor the stairway itself presented an unreasonable risk of harm to the men working on the rig. After physically inspecting the stairway in question, he stated that this stairway met the Coast Guard requirements for interior stairways, since its slope did not exceed fifty degrees. Cass testified that there are no specific regulations pertaining to exterior stairways. He further stated that the coaming did not present an unreasonable risk since it was well painted and striped and was easily observable as a hazard.
After reviewing the evidence, we find no error in the trial court's denial of this claim. The cause of Muhammad's fall was his failure to hold onto one of the stairway handrails during an attempt to traverse the stairs while carrying a bucket of industrial soap in one hand and a long-handled brush in the other hand. Accordingly, we find that he failed to carry his burden of proving that the unseaworthy condition of the OCEAN LEXINGTON, namely the position of the coaming or the location of the handrails, played a substantial part in bringing about his fall. The judgment of the trial court denying Muhammad's claim of unseaworthiness is affirmed. This assignment of error is dismissed.

MOMENTARY FORGETFULNESS
In his fifth assignment of error, Muhammad argues that the trial court erred in failing to apply the doctrine of "momentary forgetfulness" to the facts of this case. We disagree. We have held that this doctrine should apply only in those instances where there is "evidence of circumstances reasonably sufficient to have diverted plaintiff's mind from the danger in question. Mere forgetfulness or lapse of memory is not excusable absent adequate diverting circumstances." Hailey v. LaSalle Parish Police Jury, 302 So.2d 668, 671 (La.App. 3 Cir.1974). Although Muhammad testified that the employees were instructed to clean the rig because Diamond personnel were arriving for a visit, we do not find that this was the type of diverting circumstance meant by Hailey, such that it would absolve him of his comparative negligence. Muhammad stated that the cleanup they were involved in was routine cleanup. He further stated that he normally carried items in both hands while traversing stairs on the OCEAN LEXINGTON. Accordingly, we find no merit in this assignment of error.

DAMAGES
Based on our finding affirming the trial court's judgment denying Muhammad's claims for damages pursuant to the Jones *876 Act and general maritime law, this assignment of error is rendered moot.

FUTURE CURE
In its answer to appeal, Diamond argues that the trial court erred in awarding Muhammad future cure since he presented "no evidence of an immediate need for future medical treatment within a definite time frame." Following the rendition of judgment, Diamond filed a Motion and Order to Show Cause Why Future Cure Should Not Be Reimbursed with Incorporated Memorandum in Support. Diamond argued that it had paid Muhammad the sum awarded by the trial court for the lumbar surgery recommended by Dr. Adatto; however, it claimed that surgery was put off until such time as Muhammad loses weight. Thus, it argued that it was entitled to reimbursement of the $46,309 it paid for the future surgery and the termination of its maintenance obligation. Pursuant to a January 8, 2001 consent judgment, Diamond was relieved from paying Muhammad maintenance and cure from December 20, 2001, until such time as he undergoes the recommended surgery.
The law with regard to maintenance and cure was discussed in Domonter v. C.F. Bean Corp., 99-1204, pp. 17-19 (La.App. 5 Cir. 4/25/00), 761 So.2d 629, 640, writ denied, 00-1872 (La.9/29/00), 770 So.2d 354:
"Maintenance and cure" is an ancient duty imposed upon the owner of a ship to provide food, lodging and necessary medical services to seamen who become ill or injured during service to the ship. Burgess v. C.F. Bean Corp, 98-3072 (La. App. 4th Cir.8/18/99), 743 So.2d 251; Comeaux v. Basin Marine, Inc., 93-1624 (La.App. 1st Cir.6/24/94), 640 So.2d 833, 836, writ denied, 94-2307 (La.11/18/94), 646 So.2d 386; Davis v. Odeco, Inc., 18 F.3d 1237, 1245 (5th Cir.1994), cert. denied, 513 U.S. 819, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). Recovery is not dependent upon negligence of the vessel or the owner and the burden of proof in seeking maintenance and cure is relatively light. Id. In addition, generally, a seaman need only prove that the injury arose during his service of the vessel. The seaman does not have to prove a causal connection to his duties. Liner v. J.B. Talley and Company, Inc., 618 F.2d 327, 332 (5th Cir.1980); Burgess v. C.F. Bean Corp, supra; Comeaux v. Basin Marine, Inc., 640 So.2d at 836. The right to maintenance and cure exists regardless of fault. The remedy is essentially curative in nature and is not intended as compensation for injury. Boudreau v. S/V SHERE KHAN C, in rem, 27 F.Supp.2d 72, 83 (D.Maine 1998). The right to maintenance and cure arises from the employee-employer relationship. Aguilar v. Standard Oil Co., 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943)[.] Thus, the liability of shipowner for maintenance and cure will be excused only by willful misbehavior or deliberate act of indiscretion on part of seaman. Aguilar v. Standard Oil Co., 318 U.S. at 731, 63 S.Ct. at 934; DiBenedetto v. Williams, 880 F.Supp. 80, 86 (D. Rhode Island 1995).
Cure is payment of the seaman's medical, therapeutic and hospital expenses, until that point in time when plaintiff reaches maximum medical recovery. Fox v. Texaco, Inc., 97 2126 (La.App. 1st Cir.11/6/98), 722 So.2d 1064, 1067. Because it not fault based, but arises from the contractual relationship between the parties, defendant cannot avail itself of the apportionment of fault to reduce its liability for plaintiff's medical expenses. The award of medical expenses can be construed as compensation related to personal injury only when the defendant's *877 actions in failing to pay maintenance and cure results in the worsening of a plaintiff's condition. Karim v. Finch Shipping Co., Ltd., 97-2518 (La. App. 4th Cir.8/26/98), 718 So.2d 572, 580.
Additionally, a seaman may only recover maintenance and cure for those expenses actually incurred. Davis v. Odeco, Inc., 18 F.3d 1237 (5th Cir.1994), cert. denied sub nom, 513 U.S. 819, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). In Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 532-33, 58 S.Ct. 651, 655, 82 L.Ed. 993 (1938), the Supreme Court held with regard to the award of future maintenance and cure:
The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained.
In this instance, we agree with Diamond that the award of future cure should be reversed since it cannot be definitely ascertained when Muhammad will lose enough weight in order to undergo lumbar surgery. Muhammad has been attempting to lose weight since early 1997, when he began treatment with Dr. Watermeier. Since he has not been able to lose the required weight during this length of time, there is no way of knowing when, or if ever, he will successfully accomplish this task. However, our decision will not preclude Muhammad from bringing suit in the future, should he lose the weight and decide to have the surgery. Accordingly, the judgment of the trial court awarding Muhammad $46,309 in future cure is reversed.

ATTORNEY'S FEES
Diamond further argues that the trial court erred in awarding Muhammad $15,000 in attorney's fees based on its egregious conduct in wrongfully terminating his maintenance and cure benefits.
After reviewing the evidence, we find error in the trial court's award of attorney's fees based on its finding that Diamond improperly withheld maintenance and cure benefits from Muhammad subsequent to November 8, 1997. An award of attorney's fees is proper only if the employer has been found to have acted in a fashion which is "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent." Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987) (footnote omitted). That court went on to further state:
Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.
Id.
A review of the record reveals no instance in which Diamond acted in a willful, callous, or persistent manner. Rather, we find this was an instance in which there were differing opinions between the medical experts as to Muhammad's condition.
Diamond terminated Muhammad's maintenance and cure benefits on November 8, 1997, based on the opinion of Dr. Christopher Cenac, an orthopedic surgeon, who examined Muhammad on four different occasions, the last taking place on October *878 29, 1997. At his initial visit, on March 20, 1997, Muhammad did not tell either Dr. Cenac or his nurse that he was suffering from any neck complaints. He did not complain of neck pain until his October 29th visit, at which time, he stated that his neck began bothering him in August 1997. At that time, Dr. Cenac released Muhammad to full unrestricted duty finding that he was at maximum medical improvement and that he did not require any further invasive testing or treatment. After reviewing a pre-employment MRI performed on Muhammad in October 1996, and a post injury MRI of March 1997, Dr. Cenac opined that the findings on both tests were identical. He further found some slight degenerative changes in the lumbar spine in the October 2, 2000 MRI, which he attributed to aging. Dr. Cenac opined that there was no relationship between Muhammad's present problems, including his cervical findings, and the March 8, 1997 accident.
Diamond also had the opinion of Dr. Michael Molleston, a neurosurgeon, who was chosen by both Diamond's and Muhammad's original attorney's. After his April 1, 1997 examination, Dr. Molleston found nothing wrong neurologically with Muhammad. He admitted having headaches, but denied any neck pain when he was directly questioned about this by Dr. Molleston. Dr. Molleston found him uncooperative in his examination, very sensitive to trivial touching, and forcibly resistant to the straight leg raise test. He felt that this indicted symptom magnification. Although Muhammad complained of headaches on the top of his head, Dr. Molleston stated that headaches in this area were atypical for indicating the presence of a neck injury. Although he recommended Muhammad undergo further diagnostic testing, such as a bone scan, these tests were never performed.
Diamond further introduced the report of Dr. Thompson Dietz, a radiologist, who reviewed the MRIs performed on Muhammad in October 1996, March 1997, and May 2000. After reviewing these three tests, Dr. Dietz found that the later MRI was comparable to the both earlier MRIs, in that there was only a relatively subtle interval increase in the size of the previously noted L5 S1 disc herniation, which dated back to October 1996.
Finally, Diamond introduced evidence that Muhammad was involved in two automobile accidents in January 1998. In the second accident, which occurred on January 30, 1998, Muhammad stated that he struck his head into the ceiling of the car, where it joins the windshield. Both Drs. Adatto and Watermeier stated that this type of injury could cause or aggravate a previous neck injury.
Considering the evidence, we find that Diamond did have a reasonable defense for terminating Muhammad's maintenance and cure, and that it did not exhibit a callousness or indifference to his plight which would subject it to attorney's fees. Accordingly, the judgment of the trial court awarding Muhammad $15,000 in attorney's fees is reversed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court awarding Sadat Muhammad future cure is reversed, as is the award of attorney's fees. The remainder of the trial court's judgment is affirmed. The costs of this appeal are assessed equally between the plaintiff-appellant, Sadat Muhammad, and the defendant-appellee, Diamond Offshore Company.
AFFIRMED IN PART AND REVERSED IN PART.