**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**June 20, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30769
Summary Calendar

_____

MARGARET B. LAWRENCE,

Plaintiff-Appellant,

versus

EAST BATON ROUGE PARISH SCHOOL BOARD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:01-CV-710

_____

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Margaret Lawrence, *pro se*, challenges the jury's verdict that Defendant-Appellee East Baton Rouge Parish School Board ("School Board") did not discriminate against her based on her race in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and various state laws.  Because we find that the jury's verdict is supported by

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

substantial evidence, we AFFIRM the district court's entry of judgment for the School Board.

I.   BACKGROUND

Lawrence, a Black female, has been a teacher in East Baton Rouge Parish, Louisiana since 1985. Lawrence has an undergraduate degree in English from Southern University, and a Masters of Education with a specialization in reading from the University of Missouri at St. Louis. She also has a +30 hours professional certification of further graduate school training in Reading, Administration, and Supervision from Purdue University. Before working for the School Board, Lawrence worked in a variety of positions including Tensas Parish School Board's Reading Supervisor from 1979-1981 and Reading Specialist teacher in Texas middle schools in the 1980s.

Lawrence applied for the School Board's Reading Supervisor position when it was advertised in November 1997. According to trial testimony, the ideal candidate would have experience across all levels of instruction but with more emphasis in elementary education. That person would also be aware of current trends in reading and be able to train other educators on new techniques to use in their classrooms. A committee comprised of Caucasian and African-American members interviewed Lawrence and several other applicants for the position. At trial, Lawrence testified that, during her interview, Evelyn Alford, a committee member, treated her rudely, yelled at her, and interrupted her as she attempted to

2

answer a question. However, none of the other interviewers testified that Alford was rude to Lawrence. The committee did not offer the job to any of the candidates. Instead, the Board re-advertised the position and informed the previous applicants that they need not reapply. Trial testimony suggests that, while Lawrence met the minimum qualifications for the job, she was not selected because she did not have recent experience teaching reading since she had been teaching high school English courses. She also did not have any recent administrative experience in reading, having served as a reading supervisor over fifteen years ago. Some of the interviewers also testified that Lawrence was unable to articulate how she would enhance the system's reading program.

After the vacancy was re-advertised, a different panel of interviewers recommended Dr. Sarah Rentz[1] for the position. However, Rentz declined the offer. The position remained unfilled and the vacancy was re-advertised again. Lawrence reapplied and was one of the candidates interviewed by a different panel of interviewers. After that round of interviews, the committee offered the position to Dr. Karen LaCroix. Dr. LaCroix declined the offer. The committee then re-offered the position to Dr. Rentz who accepted the offer.

---

[1] Dr. Rentz worked as a reading teacher for the School Board for over twenty years. Her doctorate degree is in psychology and reading. While Dr. Rentz's teaching certificate was primarily in the area of elementary education, she had taught reading at all levels of instruction. Dr. Rentz also helped to train teachers across the state in reading techniques.

Lawrence filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a determination that it was more likely than not that discrimination motivated the School Board's decision to promote Dr. Rentz instead of Lawrence.

After Dr. Rentz retired in 2000, Lawrence applied again for the Reading Supervisor position. The position remained vacant and was re-advertised. Although the committee eventually interviewed Lawrence, it selected Christel O'Quin for the position. Testimony suggests that O'Quin was chosen because committee members were impressed with the fact that she worked as a reading specialist for the Louisiana Department of Education and because she had served as an elementary and middle school principle in another parish.

Although Lawrence filed a second charge with the EEOC, the Commission did not finish its investigation because Lawrence requested a right to sue letter before the investigation was complete. A jury trial was held in July 2005 on the issue of whether the School Board discriminated against Lawrence on the basis of race when it refused to promote her to the supervisory position on both occasions. The jury returned a verdict in favor of the School Board, and the district court entered judgment. This appeal followed.

II. STANDARD OF REVIEW

We review the jury's verdict for the School Board only to

4

determine whether it is "supported by substantial evidence." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Substantial evidence is evidence "of such weight and quality that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969)(*en banc*), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997)).

III. DISCUSSION

Lawrence's primary argument is that the School Board should have promoted her to the Reading Supervisor position because she was more qualified than Dr. Rentz and O'Quin. She asserts that because she was more qualified than the two individuals selected for the position, the only reason she was not promoted was because of her race.

Although it is undisputed that Lawrence met the minimum qualifications for the position, the jury reasonably believed the School Board's assertion that she was not the most qualified candidate for the job. The jury heard testimony regarding the qualifications of Lawrence, Dr. Rentz, and O'Quin. Dr. Rentz worked as a reading teacher for the School Board for over twenty years. She holds a doctorate degree is in psychology and reading, and she had taught reading at all levels of instruction. Dr. Rentz also helped to train teachers across the state in reading techniques. While Lawrence also has assisted in numerous workshops for other

5

teachers, she does not hold a doctorate degree. Moreover, Lawrence did not have recent experience teaching reading since she had been teaching high school English courses.

With regard to O'Quin, committee members testified that they admired that she had worked as a reading specialist for the Louisiana Department of Education and that she had served as an elementary and middle school principle in another parish. In addition, in her interview, O'Quin demonstrated a breadth of knowledge regarding innovative approaches to reading. Lawrence, on the other hand, did not have any recent administrative experience in reading, having served as a Reading Supervisor for a stint over fifteen years before the position became available. Furthermore, some of the interviewers also testified that Lawrence was unable to articulate how she would enhance the system's reading program. Therefore, we find that the jury's verdict for the School Board is supported by substantial evidence.

Lawrence also argues that the fact that the majority of interviewers on the interview committees were Caucasian suggests that the committee members were not fair in assessing the candidates' abilities. This case does not resemble those in which we have criticized interview processes involving all-white supervisory staff members serving as interviewers and relying on subjective judgments. *See, e.g.*, *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 240 (5th Cir. 1974). The record reflects that each

6

committee was comprised of male, female, Caucasian, and Black members. The fact that different interview panels met with different candidates also does not support an inference that the School Board discriminated against Lawrence. Finally, although Lawrence testified that he was treated rudely by a committee member, none of the other interviewers recalled Alford being rude to Lawrence.

IV. CONCLUSION

Because the jury's verdict is supported by substantial evidence, we AFFIRM the district court's entry of judgment for the School Board.